### KIRK et al. v. UNITED STATES.
### No. 12167.

United States Court of Appeals
Ninth Circuit.
Nov. 7, 1950.

Armond M. Jewell, Los Angeles, Cal., for appellant.

Ernest A. Tolin, U. S. Atty., Norman W. Neukom, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ORR, Circuit Judge, and GOODMAN and LEMMON, District Judges.

LEMMON, District Judge.

The three defendants were charged in two counts of a three count indictment with crimes of mailing threatening communications through the United States mail, and in the third count with conspiracy. . They were found guilty on all counts and each was sentenced to seventeen and a half years on the first count, seventeen and a half years on the second count, and two years on the third count, the sentences to run consecutively. Feltus started service under the sentence on the first count on June 11, 1941 and Kirk and Williams started their sentences on that count on November 30, 1942. On September 3, 1947, while Feltus was serving the sentence under the first count,

the court below entertained his motion for modification and entered an order suspending the execution of the sentences under the second and third counts for the period of five years from and after his release under count one. On December 10, 1948, while likewise serving the sentence under the first count, Kirk and Williams filed similar motions. These motions were denied on December 27, 1948. On February 1st, 1949, the court vacated the order which it had entered on September 3, 1947 as to Feltus. All three defendants appealed.

### Feltus Appeal

■ The order of February 1, 1949 was entered upon the court's own motion and without affording the defendant an opportunity to be heard, the Court being persuaded that the case of Bradford v. United States, 5 Cir. 156 F.2d 210, was determinative and that the order suspending the sentences as to him was beyond the court's jurisdiction.

The Bradford case is to be distinguished in that in that case the defendant had begun the service of the sentence which the court undertook to reduce. The conclusion reached there was proper in view of the cases of United States v. Murray and Cook v. United States, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309, where it was held that the trial court was powerless to change a sentence after the service of the sentence had begun, and that any other construction of the Probation Act [1] would be inconsistent with the parole powers of the Board of Parole [2] and the executive power of clemency.[3] The Bradford case stated that the beginning of the service of the sentence was not the controlling factor and held that

any authority of the court which imposed the sentence to change the same expired with the term of the court during which the sentence was imposed. The court was there dealing with the scope of the inherent power to reduce a sentence, not with the power under the Probation Act.

Undoubtedly the learned trial judge did not have called to his attention the case of Nix v. James, 9 Cir., 7 F.2d 590. There the term of the court had expired but the defendant had not as yet been imprisoned. Since the Probation Act granted the sentencing court authority to suspend a sentence and grant probation "after conviction or after a plea of guilty or nolo contendere" that court could exercise that authority at any time prior to the commencement of the service of the sentence.[4] The Nix case states the rule in this Circuit. The rule is followed in other Circuits.[5]

■ A prisoner serving the first of several consecutive sentences is not serving the other sentences.[6]

■ An order granting probation may not be revoked and an order may not be entered for execution of a suspended sentence unless some cause arises and unless some inquiry is made by the court entering such order with opportunity to the probationer to be heard. Section 2 of the Probation Act, Title 18 U.S.C.A. § 3653; Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566.

### Kirk and Williams Appeal

New Title 18 U.S.C.A. was in effect at the time the motion of these two defendants was made at the time of entry of the court's order thereon. Section 3651 thereof omits

1. Title 18 U.S.C.A. former Section 724 et seq.

2. Title 18 U.S.C.A. § 4201 et seq.

3. U.S.Constitution, Article II, Sec. 2.

4. 18 U.S.C.A. § 724. The quoted clause was omitted from New Title 18, now Section 3651, effective September 1, 1948, which states "Upon entering a judgment of conviction * * * any court having jurisdiction * * * may suspend the imposition or execution of sentence and place the defendant on probation * * *."

5. Pernatto v. United States, 3 Cir., 107 F.2d 372; Kriebel v. United States, 7 Cir., 10 F.2d 762; Ackerson v. United States, 2 Cir., 15 F.2d 268; Evans v. District Judge, 6 Cir., 12 F.2d 64; White v. Steigleder, 10 Cir., 37 F.2d 858; Gaston v. United States, 79 U.S.App.D. C. 37, 143 F.2d 10.

6. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; and see Weber v. Squier, 9 Cir., 124 F.2d 618; White v. Steigleder, supra.

188

from former Section 724 the clause which relates to the time when the court may suspend the execution or imposition of sentence and grant probation and substitutes the words heretofore noted.[7] The question arises as to whether this has effected a change in the time within which the court's authority under the probation law may be exercised.

■ The word "upon", as a preposition indicating when something happens or is to be done, means, according to Webster, "with little or no interval after". However, it may, and indeed in a logical sense does, mean "after", considering both the context and the obvious intent of its use.[8] The statute does not *deny* to the court the exercise of the power to suspend sentence after the imposition thereof. The time specified in the statute is no more than directory. Since the exercise of the power, other than at the *precise* time of sentence, is not statutorily forbidden, it may be exercised "after" or "subsequent" to the imposition of sentence.[9]

■ We are informed by the Reviser's Notes that the clause above noted was deleted as unnecessary. This indicates no intent to accomplish a substantive change through dropping the one clause and inserting the other.

The Reviser's Notes were incorporated as a part of the report of the Committee of the House in reporting the bill for passage. In answer to a query from the Chairman of the Committee as to whether the Notes would set forth the substantive changes so that any member of the House could readily determine them, Mr. Barron, the Chief Reviser, stated, "Every substantive change, no matter how minor, is fully explained so that if you in your discretion see fit to make these notes part of your report, they will adequately serve to interpret every proposed change."[10] Judge Sanborn, a member of the Advisory Committee which reviewed the proposed revision, stated in a letter to Sub-committee No. 1, "Any departures from the strict letter of existing statutes have been carefully noted by the revisers, and represent improvements of a noncontroversial character."[11] The Report of the House Committee on the Judiciary accompanying the bill states that, "The reviser's notes are keyed to sections of this bill and explain in detail every change made in text."[12] In the hearings upon the bill the work was referred to both as a codification and as a revision, but as Mr. Barron stated, in explanation of the meaning of "revision" as used by the revisers and in stressing the primary objective of the labor, "Revision, as distinguished from mere codification, meant to us the substitution of plain language for awkward terms, reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions. Toward this goal we labored."[13] We think it clear that in this revision no change in substance was intended by the Advisory Committee, the Committee on Revision of the Laws, the Judiciary Committees of the two Houses, nor by Congress in enacting the new title into law unless noted in the Reviser's Notes. The work was of such magnitude that the members of Congress adopted the final draft with confidence in the composite product of the able scholars who devoted their talents to its accomplishment, and necessarily with little individual consideration by the legislators to the possible effect of each and all of the numerous changes in language.

We conclude that since no intent to change this phase of the law is expressly indicated, the word "upon", as used in the present section, was intended to mean "after" as the latter word in the deleted clause had been interpreted.

7. See footnote 4, 185 F.2d 187.

8. 67 C.J.S. 495; People v. Williams, 24 Cal. 2d 848, 151 P.2d 244.

9. 46 C.J. 1037; County of Platte v. New Amsterdam Casualty Co., 6 F.R.D. 475 at 499.

10. P. 2672, U.S.Code, July 1948, Congressional Service, New Title 18.

11. P. 2669, U.S.Code, July 1948, Congressional Service, New Title 18.

12. P. 2669, U.S.Code, July 1948, Congressional Service, New Title 18.

13. P. 2667, U.S.Code, July 1948, Congressional Service, New Title 18.

■ The record is obscure as to the grounds for denial of the motions of these two defendants. If the order as to them was, as they assume, due to the court's opinion that the Bradford case controlled, we should remand so that court may exercise its discretion upon the facts and circumstances which have been or which may be presented. There is basis for this assumption in view of the fact that this order was made shortly before the Feltus order of February, 1949, in which the judge stated that to be the reason for his ruling.

The order of February 1, 1949 as to Feltus is reversed. The order of December 27, 1948 as to Kirk and Williams is vacated with direction to the District Court to consider and pass upon their motion in the light of this opinion.