**UNITED STATES v. SOEDER.**

**Nos. 45 CR 79-81.**

United States District Court
N. D. Illinois, E. D.
April 20, 1954.

Paul Edward Thurlow, Joliet, Ill., for petitioner.

Robert Tieken, U. S. Atty., Chicago, Ill., for the Government.

CAMPBELL, District Judge.

On June 25, 1945, the petitioner was convicted of transporting stolen vehicles in interstate commerce, and was sentenced by this court to terms of five years in the penitentiary on each of five indictments, plus concurrent sentences on several other indictments. The five-year sentences were to run consecutively; that is, the court intended that the petitioner should be imprisoned for a total of twenty-five years. This sentence is one of the longest ever imposed by this court, and it was designed to remove a violent and seemingly incurable criminal from this community. The petitioner had not only committed the serious offenses charged in the many indictments; he had induced children, including a girl whom he had made pregnant, to commit the same offenses. All of the information submitted to this court, incuding detailed reports of the Federal Bureau of Investigation, indicated that the petitioner was then incapable of adjustment in a lawful and moral society. This court could not in good conscience prescribe. lesser sentences; indeed, the sentences which were imposed were half as severe as those urged by the prosecutor. The petitioner has not begun to serve three of his sentences, and he now asks that execution of those sentences be suspended, and that he be placed on probation, because he has since reformed.

Petitions of this type are not uncommon, but they are seldom entertained.

It has long been the opinion of this court that judicial power to alter a sentence ends when the defendant is committed to the custody of the Attorney General, for any exercise of power after commitment must conflict with the Executive's pardon power, conferred by Article II of the Constitution. In United States v. Durkin, D.C., 63 F.Supp. 570, 573, decided in 1945, this court stated that "common sense, as well as a respect for the power granted solely to the Executive Branch of the Government, tells us the courts should not * * * use the Probation Act as a substitute for Executive Clemency or Presidential Pardon." That is still the opinion of the court, and if this petitioner had not submitted an unusual communication from the United States Pardon Attorney, his petition would have been dismissed without delay.

It is apparent that the petitioner once applied for Executive Clemency. When the application was denied, the United States Pardon Attorney asked the Warden of the Penitentiary to relay the following information to the petitioner:

"Subject may wish to explore the possibility of obtaining judicial relief through a motion addressed to the United States District Court at Chicago for suspension of execution of the five-year prison sentences imposed on counts 3, 4 and 5 of the indictment, or any of them, and grant him in lieu thereof, a suitable term of probation.

"Such a motion might conceivably be predicated upon the length of the sentence imposed and the assistance which subject is reported to have given the government in the prosecution of other defendants.

\* \* \* \* \* \*

"In passing upon such a motion the court would, in all probability, take into consideration the subject's previous criminal record and the detainer filed by the Sheriff of Cook County on August 14, 1945."

This letter showed beyond doubt that the officer charged with the administration of the President's pardon power believed that the court might effect the release of a person already delivered into Executive custody. Indeed, the United States Pardon Attorney had advised a prisoner that this court is empowered by law to suspend execution of three sentences imposed over eight years ago.

This view of an expanded judicial power has never been urged by an officer of the Executive Branch, at least within the experience of this court. The court therefore requested the United States Attorney for this district to determine the legal basis for the Pardon Attorney's opinion. In answer to an inquiry from the United State's Attorney, the Pardon Attorney indicated that his opinion was based in large measure upon the case of Kirk v. United States, 9 Cir., 1950, 185 F.2d 185. The facts of the Kirk case parallel the case at bar, and the court there held that a series of consecutive sentences might be severed for purposes of the Probation Act, 18 U.S. C.A. § 3651 et seq. This result is premised upon a proposition which this court does not dispute: "A prisoner serving the first of several consecutive sentences is not serving the other sentences." 185 F.2d 187. That is not to say, however, that several consecutive sentences may not be considered as one sentence for purposes of the Probation Act, and as several separate sentences for certain other purposes. This is a common concept, and it is used elsewhere in the administration of our criminal law. See, for example, Dimmick v. Tompkins, 1904, 194 U.S. 540, 551, 24 S.Ct. 780, 783, 48 L. Ed. 1110, which declares that "for some purposes the different counts in an indictment may be regarded as so far separate as to be in effect two different indictments, yet it is not true necessarily and in all cases."

The rule announced in the Kirk case had been adopted by one other court, the Court of Appeals for the Tenth Circuit.

White v. Steigleder, 1930, 37 F.2d 858. It should be noted, however, that shortly after the Steigleder decision, the same court stated in another case:

"If an overlapping of the Parole Act * * * by the Probation Act * * * and clashes between the orders of district courts and of Parole Boards are to be avoided, the Parole Act [sic] must not be construed to give authority to district courts to require the serving of some portion of a sentence of imprisonment, as a condition of parole." White v. Burke, 10 Cir., 1930, 43 F. 2d 329, 331.

This is the aggregate of the authority upon which the Kirk case may be grounded.

A well-reasoned opinion by Judge Augustus Hand, speaking for the Court of Appeals for the Second Circuit, differs sharply with the letter and spirit of the Kirk case. In United States v. Greenhaus, decided in 1936, Judge Hand had occasion to consider whether or not consecutive sentences might be severed for purposes of the Probation Act. He concluded that "so far as the Probation Act is concerned the sentences are to be regarded as for a single term." 85 F.2d 116, at page 118, 107 A.L.R. 630. Two compelling reasons for refusing to sever consecutive sentences are described in the Greenhaus opinion:

"* * * such a mode of construing the (Probation Act) might subject defendants to conflicting disciplines by the courts, the Executive, and the parole board. More than that, it would result in confusion in determining the rates of commutation of sentence to be applied under the Commutation Act". 85 F.2d 117.

The Greenhaus decision was guided by the definitive opinion in United States v. Murray, 1928, 275 U.S. 347, 48 S.Ct. 146, 149, 72 L.Ed. 309, which marks the limits of judicial power under the Probation Act. The Murray opinion makes clear that Congress did not intend to empower the district courts to control persons within the custody of the Executive. The language of the opinion leaves no room for doubt:

"Nor can we suppose that Congress would wish to grant such extended power in all but life and capital cases to the District Judges and thus subject each to the applications of convicts during the entire time until the full ending of the sentences. This would seem unnecessary for the hard-worked District Judges with their crowded dockets. A more reasonable construction is to reconcile the provisions for probation, parole, and executive clemency, making them as little of a repetition as we can. * * *"

Further, the opinion refers to the "great desideratum" of the Probation Act, the salvation of the new criminal. The Act was not intended to benefit persons already imprisoned; and therefore judicial power under the Act ends when the prisoner begins to serve his sentence. In the words of the Murray opinion, "Such a limit for probation is a natural one to achieve its end."

The language of the Probation Act may be construed more broadly. Indeed, the accepted canons of construction may well lead to an adoption of the result reached in the Kirk case; but this court prefers to be guided by the clear terms of United States v. Murray: "We do not say that the language is not broad enough to permit a possibly wider construction, but we think this not in accord with the intention of Congress." With due deference to the Court of Appeals for the Ninth Circuit, this court holds that several consecutive sentences, imposed together, must be treated as one for purposes of the Probation Act.

The President has plenary power to pardon or parole this petitioner. That power is defined exactly in the Constitution, and may not be altered by Congress or the courts. Ex parte Garland, 1866, 4 Wall. 333, 380, 71 U.S. 333, 380, 18 L.

Ed. 366; Yelvington v. Presidential Pardon and Parole Attorneys, D.C.Cir., 1954, 211 F.2d 642. Everything submitted by the petitioner to this court in support of his motion deserves serious and deliberate consideration by a Presidential Pardon Attorney. The petitioner submits, for example, that his institutional behavior has been excellent. But he is imprisoned in an institution governed and maintained by the Executive, not the courts, and the Executive is better qualified than any court to grade the petitioner's behavior. The petitioner submits that he has participated in religious activities, and that he has persuaded his fellow prisoners to follow his example. Here again, the activity is within the walls of an institution under complete Executive control. The petitioner also submits that he has aided in the prosecution of other criminals; but this too is a matter fit for Executive, not judicial consideration.

This court does not intend to discount any of the several persuasive arguments for relief contained in the petition. If similar arguments were submitted at the time the petitioner was sentenced, they would have been entertained. Unfortunately, there were no mitigating circumstances whatever when the petitioner's sentences were imposed, as indicated in the beginning of this memorandum. Indeed, each of the arguments now submitted by the petitioner could not have been raised then, for each relates to his behavior after commitment to prison. These arguments should be addressed to the Executive Branch, which has the authority and the means to decide whether the petitioner is now fit to live in a lawful community.

This court always considers all factors which may influence a defendant's behavior, but this can be done only before sentence is imposed. The facilities which contribute to intelligent decisions, such as the comprehensive reports of the Probation Officers, are not available after the defendant is delivered to prison. He is then supervised and guided by persons responsible to the Executive, and responsibility for his behavior properly shifts from the court to the Executive. This division of power has worked well, and the court will not disturb it now, even at the request of the Executive.

For the reasons stated, the petition is dismissed and the petitioner is advised to re-apply for Executive Clemency.