**PHILLIPS v. UNITED STATES.**

No. 14848.

United States Court of Appeals,
Eighth Circuit.

April 13, 1954.

Rehearing Denied May 4, 1954.

John P. Baird, Richmond Heights, Mo., (appointed by the Court), for appellant.

Paul R. Shy, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether a District Court which has entered a judgment of conviction of a defendant upon an indictment or information containing a number of counts and has sentenced him to serve a period of imprisonment under each count—the periods to run consecutively,—may, *after the defendant has commenced the service of his sentence,* suspend, for purposes of probation, the further execution of it with respect to completely unserved periods of imprisonment.

The power to suspend execution of sentence and grant probation is derived from § 3651, Title 18 U.S.C.A., 62 Stat. 842,[1] which is included in Chapter 231

---

1. The first paragraph of § 3651 provides: "Upon entering a judgment of conviction of any offense not punishable by death or life imprisoment, any court

of that Title. Rule 32(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that "After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation as provided by law."

On February 11, 1949, Melvin Herman Phillips (who will be referred to as defendant), after waiving indictment, entered a plea of guilty to an information which contained five separate counts, each of which charged him with a violation of the National Motor Vehicle Theft Act, 18 U.S.C.A. § 2312. On the same day, the District Court, in conformity with Rule 32(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and § 4082, Title 18 U.S.C.A., entered a judgment and order, reading in pertinent part as follows:

"It Is Adjudged that the defendant is guilty as charged and convicted.

"It Is Adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of one (1) year and one (1) day on each of counts 1, 3 and 4, and for a period of three (3) years on each of counts 2 and 5, the sentences imposed to be served consecutively, for a total of nine (9) years and three (3) days; without costs.

"It Is Ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that the copy serve as the commitment of the defendant."

Pursuant to this judgment, the defendant was delivered into executive custody, and commenced the service of the sentence imposed upon him.

On April 22, 1953, the defendant filed in the District Court a "Motion for Modification and Suspending Execution of Sentences," in which he asserted that he had served the periods of imprisonment, which he referred to as "sentences", based on counts 1 and 2, and was serving "the one year and one day sentence imposed on count 3, which will expire on February 17, 1954"; that subsequent thereto he will be required to serve one year and one day on count 4 and three years on count 5; that he has a most creditable institutional record; that the Parole Board had denied him parole, although the United States Attorney and the District Court had recommended that he be paroled; that it has been the practice of various District Courts during the period of service of the first of several consecutive "sentences" imposed under the separate counts of the same indictment or information, to suspend the further execution of the judgment and to grant probation as to periods of imprisonment which have not yet been served; and that the District Court has jurisdiction to grant the defendant probation with respect to the periods of imprisonment based on counts 4 and 5 of the information. The defendant asked the court to suspend the execution of the "sentences" on counts 4 and 5 of the information for a period of five years from and after the "defendant's release on the sentence imposed upon Count 3, which he is presently serving."

The District Court denied the motion on the ground that it was without power to grant the motion, in view of the decision of the Supreme Court in the cases of United States v. Murray, and Cook v. United States, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309, holding that, under the Probation Act of March 4, 1925, 43 Stat. 1259, Title 18 U.S.C. (1940 Ed.) § 724,[2]

having jurisdiction to try offenses against the United States, except in the District of Columbia, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such peri-

od and upon such terms and conditions as the court deems best."

2. The first paragraph of the Act, so far as pertinent, provided:

"The courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia,

a District Court could not place a defendant on probation after he had commenced to serve his sentence, and in view of Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[3]

The District Court, however, granted the application of the defendant for leave to appeal in forma pauperis from the denial of his motion, stating that it would be helpful to have a ruling regarding the power of a District Court to suspend, for purposes of probation, the execution of unserved periods of a sentence under circumstances such as are here involved.

This Court appointed Mr. John P. Baird, Jr., of the St. Louis, Missouri, bar, to represent the defendant on appeal. We are indebted to Mr. Baird for an excellent brief and argument in support of the defendant's contention that, notwithstanding the partial execution of the judgment and sentence imposed on him, the District Court still has power to grant probation as to unserved periods of imprisonment.

In dealing with the problem involved in this case, it must be kept in mind that the law by virtue of which the District Courts have power to suspend the imposition or execution of sentences and place defendants on probation is no longer an isolated statute but a part of a comprehensive and orderly revision of all of the statutes relating to federal crimes and criminal procedure. The Revision of Title 18 of the United States Code included not only the law relating to probation but also the law pertaining to executive procedures for the relief or release of federal prisoners, including good time allowances and parole. This carefully prepared and complete revision of Title 18 of the United States Code was enacted by Congress on June 25, 1948. 62 Stat. 683–868. Those who drafted the revision [4] and those who enacted it certainly intended that the functions of the judiciary under Chapter 231 of Title 18 U.S.C., 62 Stat. 841, relating to probation, should not overlap or conflict with the functions of the Attorney General and the Director of the Bureau of Prisons with respect to the custody of federal prisoners and good time allowances under Chapter 309, Title 18 U.S.C., 62 Stat. 853, or the functions of the Board of Parole under Chapter 311, Title 18 U.S.C., 62 Stat. 854, or the powers of the President relative to executive clemency.

It will be noted that § 4161, Title 18 U.S.C.A., which provides the number of days of good time a prisoner shall be entitled to be credited with each month, bases the computation upon the total term of imprisonment to be served. The last paragraph of the section provides:

"When two or more consecutive sentences are to be served, the aggregate of the several sentences shall be the basis upon which the deduction [good time allowance] shall be computed."

when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant upon probation in the manner aforesaid."

3. "Rule 35. Correction or Reduction of Sentence.

"The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari."

4. It is stated in Kirk v. United States, 9 Cir., 185 F.2d 185, 188, which is hereinafter referred to, that the writer of this opinion was a member of the Advisory Committee having to do with the Revision of Title 18. That is incorrect. He was on an advisory committee which participated in the Revision of Title 28 U.S.C. This is unimportant, but is mentioned in the interest of accuracy.

It will also be noted that § 4202, Title 18 U.S.C.A., which is part of the chapter of Title 18 relating to parole, provides as follows:

"A Federal prisoner, other than a juvenile delinquent or a committed youth offender, wherever confined and serving a definite term or terms of over one hundred and eighty days, whose record shows that he has observed the rules of the institution in which he is confined may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence or of a sentence of over forty-five years."

The instant case indicates why it is undesirable that the courts should have power to interfere with the executive function [5] of carrying final judgments in criminal cases into effect. The defendant states in his motion that, despite recommendations of the United States Attorney and the District Court, he has been denied parole by the Board of Parole. Assuming that this statement is correct, he is now, in effect, asking the District Court, which has had neither custody, control nor supervision of him since he was sentenced, to override the determination of the Board of Parole, with its superior opportunity to watch his conduct and appraise his character, by suspending his sentence as to unserved periods of imprisonment, placing him on probation, and commanding the prison authorities to release him.

We are convinced that Congress, when it passed the Probation Act of March 4, 1925, 43 Stat. 1259, 18 U.S.C. (1940 Ed.) § 724, and when it enacted Chapter 231 of Title 18 U.S.C., did not intend to empower a District Court to suspend the execution of any part of a sentence of imprisonment imposed by a final judgment in a criminal case, after the defendant had entered upon the execution of the sentence.

So far as we are advised, there have been, since the advent of federal probation, three reported cases supporting the view that a District Court may suspend the execution of the unserved parts of a cumulative sentence, Brosius v. Botkin, 72 App.D.C. 279, 114 F.2d 22, 23, which a prisoner has commenced to serve. In 1926 the District Court of the District of Arizona, in United States v. Chafina, 14 F.2d 622, held that the Probation Act authorized the suspension of the unexpired portion of a general or single sentence of imprisonment which a prisoner was serving. This case was referred to but overruled in the Murray and Cook cases, 275 U.S. 347, 358, 48 S.Ct. 146, 72 L.Ed. 309. In 1930 the Circuit Court of Appeals of the Tenth Circuit in White v. Steigleder, 37 F.2d 858, expressed the view that a District Court could grant probation to a prisoner with respect to the completely unserved portions of a cumulative sentence, although the main question in that case was whether a defendant could be sentenced to imprisonment under one count of an indictment and be placed on probation under other counts.

The case upon which the defendant most strongly relies and which unquestionably supports his contention that the District Court can still suspend the execution of his unserved periods of imprisonment and grant him probation, is Kirk v. United States, 9 Cir., 185 F.2d 185, decided in 1950. It was held in that case that a prisoner who had been convicted under an indictment in three

---

5. In United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354, which involved the question of the power of a District Court to reduce a sentence of imprisonment after the defendant had commenced to serve it, but before the end of the term at which it was imposed, Mr. Justice Sutherland said:

"* * * The judicial power and the executive power over sentences are readily distinguishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment, but does not alter it qua judgment. To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance." 51 S.Ct. 115.

counts and who was serving the first of three consecutive periods of imprisonment (17½ years on the first count, 17½ years on the second count, and 2 years on the third count) was serving only the first of the "sentences", and that the power of the District Court to suspend the execution of the unserved "sentences", for purposes of probation, did not end when the prisoner commenced the service of the first of them. This ruling, it seems to us, is contrary to both the letter and the spirit of the decision of the Supreme Court in the Murray and Cook cases.

We think it is unnecessary to attempt to trace the case history of the Probation Act of March 4, 1925, from its inception to the time it was revised and became Chapter 231 of Title 18 U.S.C., but some reference to the judicial environment in which the Murray and Cook cases arose may be helpful.

Judge Sibley, of the Fifth Circuit, while a District Judge, on February 8, 1926, in Archer v. Snook, D.C.N.D.Ga., 10 F.2d 567, rejected the idea that, under the Probation Act, the court could suspend the execution of a partially unexecuted sentence, remove the prisoner from executive custody, and place him on probation.

Judge Pollock, of the District of Kansas, on July 14, 1925, when that District was a part of the Eighth Circuit, in the case of Mouse v. United States, D.C.D. Kan., 14 F.2d 202, which is indistinguishable from the instant case, held that the District Court had no power to suspend one of several consecutive sentences, although it had not been served, because the prisoner was in executive custody and the commencement of service of a part of the terms of imprisonment imposed ended the power of the court to suspend execution of any of them or to grant probation.

Judge Youmans, of the Western District of Arkansas, on November 15, 1926, in the case of Davis v. United States, D.C.W.D.Ark., 15 F.2d 697, refused to follow the views expressed in United States v. Chafina, supra, 14 F.2d 622, and

followed Judges Sibley and Pollock in ruling that the power of the District Court, under the Probation Act, to suspend the execution of sentence, for probation purposes, ended when the defendant entered upon the execution of sentence.

Judge St. Sure, of the Northern District of California, on January 21, 1927, in United States v. Young, D.C.N.D.Cal., 17 F.2d 129, 132, said, with respect to the granting of probation after service of sentence had commenced: "The prevailing opinion is that probation cannot be granted in such a case."

The case of United States v. Cook, 5 Cir., 19 F.2d 826, 827, which reached the Supreme Court, was decided by the Circuit Court of Appeals for the Fifth Circuit on June 14, 1927. Cook had been charged by an indictment in twelve counts with fraudulent use of the United States mails. He was convicted and sentenced by the United States District Court for the Northern District of Texas, and entered upon the execution of sentence in April, 1925. In March of 1927 the District Court ordered the unserved portion of his sentence suspended, and granted him probation. The Government appealed. All that was said in the opinion of the Court of Appeals and in the later opinion of the Supreme Court relative to the form of the sentence imposed on Cook was that he was sentenced to serve "a total of 14 years and 9 months". The fact is that when the District Court ordered Cook placed on probation, he had not commenced to serve any one of the nine consecutive sentences or periods of imprisonment imposed on him under the last nine counts of the indictment upon which he was convicted. With respect to periods of imprisonment, the sentence provided as follows: five years upon each of the first three counts, to be served concurrently, followed by 13 months imprisonment upon each of the remaining nine counts, to be served consecutively. It seems obvious that the same problem with which we are concerned was involved in the Cook case.

The Circuit Court of Appeals reversed the order of the District Court granting Cook a suspension of the execution of the unexpired portion of his sentence and placing him on probation. Among other things, the court said, at page 828 of 19 F.2d:

"Nothing in the language of the Probation Act indicates an intention to change or add to the existing laws on the subject of releasing, before the expiration of the time for which they were sentenced, persons confined in execution of judgments of conviction of offenses against the laws of the United States. Before that act was passed Congress, by the enactment of the Parole Act and other statutes above referred to, had adopted a plan for dealing with that subject. Those statutes disclose the intention of the lawmakers with reference to shortening terms of confinement entered upon by convicted persons. To that end limited powers are conferred. In view of the existence of those statutes, and of the absence from the Probation Act of any reference to them, or to the subject of releasing from imprisonment persons who have already begun to serve sentences imposed, the conclusion is warranted that the lawmakers did not intend the Probation Act to empower the courts mentioned to make such an order as the one now in question.

"If the Probation Act authorized the making of such an order, each court exercising the power granted may, as to any imprisoned convict, set at naught the limitations and restrictions of the parole and commutation statutes, leaving the system established by those statutes in force only so far as each of the courts mentioned, in the exercise of an unrestricted discretion, may permit it to remain in force. We do not think that the language of the Probation Act justifies the conclusion that it was intended to deal with the subject of releasing from imprisonment a person confined in execution of a judgment of conviction rendered at a term of court which has expired, or that it changed, modified, or to any extent repealed or superseded the statutes dealing with that subject."

The cases of Murray and Cook reached the Supreme Court in 1927, and were decided January 3, 1928, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309. The District Court for the District of Nebraska had placed Murray on probation one day after he commenced the service of his sentence, but within the term of court at which sentence was imposed. The Government appealed, and the Circuit Court of Appeals for the Eighth Circuit certified to the Supreme Court the question whether the District Court had authority to place Murray on probation. The Cook case went up on certiorari. In its opinion the Supreme Court said that the controlling question in both cases was "whether there is any power in the federal courts of first instance to grant probation under the Probation Act, after the defendant has served *any part* of his sentence." At page 352 of 275 U.S., at page 147 of 48 S.Ct. The following excerpts from the opinion state the views and the conclusion of the court with respect to that question, at pages 356–357, 358 of 275 U.S., at page 149 of 48 S.Ct.:

"The Probation Act gives power to grant probation to a convict after his conviction or after a plea of guilty, by suspending the imposition or suspending execution of the sentence. This probation is to be after conviction or plea of guilty. The question is—Before what time must it be granted? Two answers to this latter question are possible. It must either be grantable at any time during his whole sentence or be limited to a time before execution of the sentence begins. If the first answer is adopted, it would confer very comprehensive power on the district judges in the exercise of what is very like that of executive clemency in all cases of crime or misdemeanor. It would cover in most cases the period between the imposition of the sentence and the full execution of it. It would cover a period in which not only clemency by the President under

**334**

the Constitution might be exercised but also the power of parole by a board of parole abating judicial punishment to the extent of two-thirds of it as to all crimes punishable by imprisonment for more than one year. It seems quite unlikely that Congress would have deemed it wise or necessary thus to make applicable to the same crimes at the same time three different methods of mitigation.

"Nor can we suppose that Congress would wish to grant such extended power in all but life and capital cases to the District Judges and thus subject each to the applications of convicts during the entire time until the full ending of the sentences. This would seem unnecessary for the hard-worked District Judges with their crowded dockets. A more reasonable construction is to reconcile the provisions for probation, parole, and executive clemency, making them as little of a repetition as we can. Executive clemency must, of course, cover every form of relief from punishment. The parole statute provides a board to be invested with full opportunity to watch the conduct of penitentiary convicts during their incarceration, and to shorten it, not only by the regular monthly reduction of days, but by a larger diminution by parole.

\* \* \* \* \* \*

"The words of the first section [of the Probation Act] important upon this issue are: 'shall have power, after conviction or after a plea of guilty or nolo contendere, \* \* \* to suspend the imposition or execution of sentence and to place the defendant upon probation.' The words mean to suspend the imposition of sentence, or to suspend the execution of sentence, and that the placing of defendant upon probation is to follow the suspension of the imposition, or the suspension of the execution of sentence, without an interval of any part of the execution. That is a reasonable construction, and serves the well-understood purpose of the statute. The suspension of execution was the point in time to which the provision for probation was

directed. We do not say that the language is not broad enough to permit a possibly wider construction, but we think this not in accord with the intention of Congress."

The reasons given by the Supreme Court for its conclusion in the Murray and Cook cases did not differ substantially from those upon which Judges Sibley, Pollock, and Youmans, and the Circuit Court of Appeals for the Fifth Circuit had previously relied in ruling that, after a defendant had entered upon the service of a sentence, or any part of it, the power of the court to suspend any unserved portions had ended.

██ The decision of the Supreme Court in the Murray case, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309, and the later decision in United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354, made it clear that the power of a District Court to suspend the execution of a sentence for the purpose of probation was derived solely from the Probation Act, had no existence prior to the passage of the Act, and had no relation to or connection with the general powers of a District Court to reduce a sentence during the time the court had power to reduce it, which, when those cases were decided, was during the term of court at which sentence was imposed, and is now fixed by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. It is apparent, therefore, that Rule 35 does not relate to the time within which the power of the court to suspend sentence for probation purposes may be exercised. Probation is in no sense a reduction of sentence. It is discipline under supervision, without incarceration, and is intended for those offenders who can, with safety to the public, be left at large after conviction and who may honestly and reasonably be believed to be susceptible of reformation. We think, however, that Rule 35 properly may be regarded as indicating the time within which the Supreme Court of the United States believes that a criminal case, after conviction, should be finally disposed of by a District Court.

A criminal action is terminated by the final judgment entered upon a plea or a verdict of guilty. Frad v. Kelly, 302 U.S. 312, 317, 58 S.Ct. 188, 82 L.Ed. 282. Final judgment means sentence, and sentence means final judgment. Miller v. Aderhold, 288 U.S. 206, 210, 53 S.Ct. 325, 77 L.Ed. 702; Hill v. United States ex rel. Wampler, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283; Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204; and compare Toyosaburo Korematsu v. United States, 319 U.S. 432, 434–435, 63 S. Ct. 1124, 87 L.Ed. 1497.

We think it is not strictly accurate to speak of the successive terms or periods of imprisonment which a defendant is sentenced to serve under a final judgment, such as that in suit, as though they were, for purposes of executive custody, separate and distinct judgments or sentences entered upon separate convictions. A judgment and sentence, in our opinion, is no less a final disposition of a criminal case because it imposes successive periods of imprisonment. Realistically, a valid cumulative sentence made up of successive periods of imprisonment totaling a certain number of years is, for purposes of custody, the exact equivalent of a general sentence of imprisonment for the same number of years. See and compare Neely v. United States, 4 Cir., 2 F.2d 849, 852–853; United States v. Daugherty, 269 U.S. 360, 363–364, 46 S.Ct. 156, 70 L.Ed. 309; Ong v. Hunter, 10 Cir., 196 F.2d 256, 257.

We are not overlooking the fact that a District Court can—as it always could since the passage of the Probation Act—place a convicted defendant on probation as to certain counts of an indictment or information, and sentence him to imprisonment on others,[6] but it is our opinion that if that is to be done it must be done upon "entering a judgment of conviction" and before the defendant has commenced the execution of the judgment and sentence terminating the case. Nothing that is said in this opinion is to be taken or understood as intimating that there is anything invalid or improper in a sentence which requires imprisonment under one or more counts of an indictment and provides for probation on others.

It is our conclusion that when the defendant in the instant case entered upon the execution of the judgment and sentence imposed upon him, the District Court lost its power to suspend the execution of any part of the sentence.

We take the liberty of saying that if the power to grant probation to a federal prisoner as to unserved parts of a sentence were to be conferred on the District Courts, it would be both unsound and unjust to make the exercise of the power depend upon the type of sentence the prisoner was serving. There is little uniformity in the forms of sentences which courts impose. The sentence in the instant case is susceptible of being construed either as a cumulative sentence or as a sentence calling generally for nine years and three days of imprisonment. Some judges prefer to impose cumulative sentences upon convictions under indictments containing several counts, allocating to each count a period of imprisonment, the periods to be served successively. Some judges prefer to make the periods of imprisonment partially or wholly concurrent. Other judges impose a general or single sentence of imprisonment covering all counts. Such a sentence is just as lawful and apparently less vulnerable than a cumulative sentence. Barnes v. United States, 8 Cir., 197 F.2d 271, 273.

It is to be hoped that, in view of our disagreement with the decision of the Court of Appeals for the Ninth Circuit in Kirk v. United States, supra, the Supreme Court will grant certiorari, since the importance of having substantial uniformity throughout the circuits with respect to the granting of probation

6. See Weber v. Squier, 9 Cir., 124 F.2d 618, 619–621; United States ex rel. Edelson v. Thompson, 2 Cir., 175 F.2d 140, 141–142.

after a defendant has commenced the service of sentence is obvious. The defendant may petition for certiorari without prepayment of Clerk's fees or costs in this Court. Counsel appointed by this Court to represent the defendant on this appeal will, no doubt, be willing to assist him in the preparation of the necessary petition and record.

The order appealed from is affirmed.

COLLET, Circuit Judge (dissenting).

I cannot agree with the construction placed upon the Probation Act by the majority opinion. For many years, as noted in the Murray and Cook cases, the trial courts had been exercising the power of suspending sentences. After that power had been held to be non-existent in Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, the need for power of this nature in the District Courts was recognized and supplied by the original Probation Act. When the Act was first passed, the Supreme Court, in the Cook case, assumed its only purpose was to enable the District Courts to relieve a deserving defendant of *any* imprisonment and the stigma that attached to imprisonment.[1] Upon that assumption the court concluded that imprisonment being imposed and commenced, the Probation Act did not contemplate any further control of a defendant by the courts. But that concept of the purpose and utilization of the Act was soon dispelled. The Act, being remedial in nature and obviously intended to give trial courts broad discretionary powers, was properly liberally construed to that end. Trial courts assumed that they had the power to impose a sentence of imprisonment on one count or charge and suspend sentence on another. That assumption was general, if not universal. Congress recognized its propriety when, in the general revision in 1948, it inserted the provision in § 3651—"Probation may be limited to one or more counts or indictments". Thus the severability of consecutive sentences was firmly established, in contrast to the concept of the Cook case where the court treated all as one for the purposes of that case. In that case the question posed here was not reached. The court simply assumed that the purpose of the Probation Act was served when the trial court suspended or refused to suspend all sentences, and its function being at an end, the executive power became exclusive.

Now we give to the Act a narrow and strict construction by which the power of the trial courts is limited to granting probation in the first instance or not at all. On first impression it might appear that the retention of such power is not important. But that is not so. Experience of the trial courts in the enlightened administration of criminal jurisprudence has demonstrated that much value may be obtained from the knowledge of how a defendant reacts to the rehabilitation efforts of the penal authorities during confinement. Consequently, the practice has been widely followed of imposing separate sentences of imprisonment on separate counts or charges and then, in the light of developments later, suspending a subsequent sentence or sentences not yet commenced, if such action is merited. Thus the risk of mistakes in the difficult task of properly measuring the defendant's worth is minimized. The danger of granting probation in a doubtful case and having the defendant later commit another offense while on probation is lessened. The danger of requiring a long term of imprisonment, when the character of the defendant is disclosed to be such that a much shorter one is adequate, is reduced. The humanitarian objective of the Probation Act has thereby been utilized and advanced.

And the good time allowance section of the Code has not been abrogated nor

[1] "The great desideratum [of the Probation Act] was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment." 275 U.S. 347, 357, 48 S.Ct. 146, 149.

has it been any obstacle to the practice. When a subsequent sentence is suspended by the court, the simple mandatory mathematical calculation is made by the penal authorities upon the basis of the shorter total period of confinement. That has been going on for years. The good time statute is only a mandatory yardstick given the penal authorities for making a simple calculation. It is not a limitation on the power of the courts. The courts are not usurping the authority of the executive branch when they perform the function of determining whether probation should be granted.

It is suggested that the revisers of Title 18 of the Code did not intend that the functions of the judiciary relating to probation should overlap or conflict with the functions of the executive branch of the government with reference to custody and good time. The inference appears to be that from the revision should be read into the law a purpose to limit the long-established practice of pronouncing separate sentences for the purpose of reserving jurisdiction to suspend one or more later if the facts warrant. But, as stated in Kelley v. United States, 10 Cir., 209 F.2d 638, 639, wherever a substantive change was intended by the revision, the reviser's notes so indicate. The reviser's notes indicate that there was no intention to change the power of the courts to suspend sentence and grant probation at any time before the service of the sentence begins. Kirk v. United States, 9 Cir., 185 F.2d 185; Kelley v. United States, supra. Hence, the crux of the present question is whether sentences which are separate and distinct at the time of original sentence automatically and irrevocably become one indivisible general sentence immediately upon the commencement of the service of the first. Or, as stated in the majority opinion, do the sentences, conceded to be separate and several at the time of imposition for purposes of probation, become "for purposes of custody, the exact equivalent of a general sentence of imprisonment for the same number of years"? To warrant that assumption it

is necessary to assume that the power of probation is abruptly and automatically shut off by incarceration on an antecedent sentence and custody is the only remaining function to be performed. That assumption is not sound, yet it is made the ground for denying any remaining power in the courts over sentences not yet begun. That, of course, is the exact purpose and effect of the majority opinion. But it seems to me that to give the Act such a narrow construction is unwarranted and not consistent with recognized rules of statutory construction of remedial legislation.

And if it be said that the retention of the power later to suspend a sentence, the execution of which has not yet begun, will cause harassment of the District Courts, the answer is that those courts may, in a case free from doubt as to the proper duration of imprisonment, impose a general sentence on all counts and forever bar any application for suspension and probation as to any part after its service has begun. But if the court is in doubt, and that must inevitably be the case in many instances, it should have the power, as it has been done in the past, to pronounce separate sentences of imprisonment and thereby reserve the power later to suspend one or more, the service of which has not yet begun. In the latter cases the District Courts have the absolute discretion to hear or not to hear applications for probation with or without the presence of the defendant. And their refusal or consent to do so, and their action in granting or refusing to grant probation on the merits of each case, are not subject to appellate compulsion or review. United States ex rel. Checa v. Williams, 5 Cir., 12 F.2d 65.

The original Probation Act by implication and the amended Act explicitly give the power to the courts to pronounce separate sentences. Under the original Act, the power and jurisdiction of the courts over probation extend to the time of the beginning of the execution of the several sentences. That power is not changed by the revision. Pro-

bation is by statute a judicial, not an executive function. There is nothing in the original Act or the revised Code which indicates a legislative intent automatically to divest the courts of jurisdiction over probation as to a sentence not commenced, when the custody of a defendant is vested in the executive on another sentence. And there is nothing in the Code which requires a merger of all sentences into one and a figurative transfer of jurisdiction over probation from the courts to the penal authorities as to sentences not yet commenced. In my opinion the majority opinion does that, without legislative sanction.

I would remand the case to the District Court in order that that court which entered the judgment, may, in the light of its power to entertain the application for probation, hear or not hear, grant or not grant the application, as the informed judgment of that competent court dictates.