**UNITED STATES v. STERN.**

**No. 22084.**

United States District Court
D. Maryland, Criminal Division.
Aug. 3, 1954.

George Cochran Doub, U. S. Atty., Herbert H. Hubbard, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

David P. Siegel, New York City, Paul J. Reed, Jr., Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the defendant, by counsel other than trial counsel in the case, has made a motion for a new trial under Rule 33 of the Rules of Criminal Procedure, 18 U.S.C., which provides, among other things, that a new trial may be granted on the ground of newly discovered evidence, if the motion is filed within two years after final judgment. Along with this motion are two alternative applications for relief of a different nature.

On February 13, 1951 the defendant was indicted on 16 counts for violation of title 18, § 2312, of the United States Code, interstate transportation of known stolen automobiles. He was represented during the trial by competent counsel of his own selection, especially experienced in the trial of criminal cases. The offenses alleged in the indictment occurred on various dates in 1950. The defendant pleaded not guilty and a trial was held on September 23, 24, 25 and 26, 1952. The verdict of the jury was not guilty on count No. 9 of the indictment under instructions by the court, and not guilty on counts 3, 4 and 5, but guilty on counts 1, 2, 6, 7, 8, 10, 11, 12, 13, 14, 15 and 16. The sentence was that the defendant be imprisoned for five (5) years on each of counts 1 and 2 of the indictment, said terms of imprisonment to run consecutively, and a year and a day on the remaining counts 6, 7, 8, 10, 11, 12, 13, 14, 15 and 16, said terms of imprisonment to run concurrently with the terms of imprisonment imposed on count 1, and to pay a fine of $5,000 on each of counts 1 and 2, said fines to be cumulative, together with costs and with further commitment in default of payment of said fines. There was no motion for a new trial filed at the time, and no appeal was

taken. The dominant reason for the sentence will appear from a stenographic report of the proceedings in court. The defendant by his counsel and personally when invited, declined to make any particular statement with regard to the circumstances of the case.

Included in the motions for a new trial is relief requested "in the interest of justice" under section 2255 of title 28 of U.S.C.A., which is the well-known modern substitute for a writ of coram nobis, and on the conditions therein mentioned makes provision for vacating a sentence in a criminal case where the court was without jurisdiction or the sentence is erroneous or is otherwise subject to collateral attack.

Filed with the motion are voluminous papers and documents thought to tend to support the motion.

Briefly summarized, the reasons for the motions are (1) misconduct and unfair prosecution in the trial by the United States Attorney; (2) incompetence and negligence or other misconduct of defendant's trial counsel; (3) that subsequent to the trial in this case one Gabrial Vigorito and others were indicted in New York for conspiracy to transport stolen automobiles (four of which are said, by present counsel for Stern, to be among those involved in the 16 counts of the indictment in this case) and that Vigorito pleaded guilty to the conspiracy and to one substantive count and received a sentence of five years and a $5,000 fine; (it is averred in the motion that the overt acts mentioned in the Vigorito indictment in New York have "important bearing upon the Baltimore indictment and conviction and upon defendant's innocence and upon those who were really guilty") (4) newly discovered evidence consisting of various matters including the testimony in the New York case of one Warshawsky who was an important witness in the case here, and Stern's testimony in the New York case. It is also alleged in the motion that the defendant's testimony here was under duress, threats and fear and that the defendant did not have a real trial or a fair and constitutional trial, and that the defendant was prejudiced at the trial by questions asked and statements made by the United States Attorney, and other errors committed upon the trial.

Counsel for the defendant have been fully heard in support of the motions during extended hearings on several different days, at which hearings the testimony of Stern and other witnesses was taken. I think it unnecessary to consider in any detail the contentions now made for vacating the sentence under section 2255 of title 28. Nothing has been brought to my attention to show that the defendant did not have a fair and constitutional trial here or that the sentence was erroneous or otherwise subject to collateral attack. Particularly I find nothing which would tend to indicate any unfairness in the prosecution of the case by the United States Attorney. Under the indictment as to each count on which the jury found the defendant guilty, it was necessary for the prosecution to prove three facts—(1) that the automobiles were stolen; (2) that they were transported interstate into Maryland by the defendant and (3) that he knew them at the time to have been stolen. There was very ample evidence submitted at the trial of the case of all three essential facts. There were 28 witnesses called to testify for the United States. The only witness for the defendant was the defendant himself. In brief summary, the Government proved that at least 15 of the automobiles mentioned in the indictment had been stolen in New York or New Jersey. This testimony was substantially undisputed. There was also evidence, undisputed except in part by the defendant himself, that 12 of the 16 automobiles had been sold by the defendant in Baltimore to the Park Circle Motor Company of Baltimore City, of which Warshawsky was the Manager of the Used Car Department. There was also evidence in the case that the defendant had sold in person 3 other automobiles stolen in New York or New Jersey to one Haugh, trading as "Cadil-

lac Jack" in Baltimore, and these sales were made in Baltimore in person by Stern to Haugh. The jury acquitted the defendant on the three counts applicable to those three automobiles inferentially because there was some doubt as to whether on the evidence the defendant Stern had personally transported or caused the particular automobiles to be transported interstate. There was also evidence of two agents of the Federal Bureau of Investigation who had made investigations into the subject matter to the effect that the defendant, Stern, when questioned about the subject had in substance stated that he had sold many of the cars to Warshawsky and had been paid for them and that he had himself transported at least some of them from New York or New Jersey to Baltimore; but he denied that he knew they were stolen. There was also much detailed evidence in the case with regard to the nature and invalidity of the bills of sale or other evidence of title furnished by the defendant to Park Circle at or about the time of the sales. It was not until some months after the last of the stolen cars had been sold to the Park Circle Company that the thefts were discovered and Warshawsky then unsuccessfully made demand upon Stern for reimbursement. It also appeared on cross-examination of Stern as a witness in the case that he had previously pleaded guilty to grand larceny in New York in connection with alleged unlawful disposition of motor cars, and had been released on probation for five years. Present counsel for Stern state that in granting probation the New York court had indicated that possibly the offense was technical in nature and that Stern had otherwise lived a commendable life. At the trial of his case here Stern gave no adequate explanation of his recent possession of the many stolen cars and now admits that his testimony as a witness in his case here was intentionally false, especially in his effort to throw the blame on another person named by him whom he knew to be innocent. His present attempted excuse for this wilful per-

jury here was that he acted under the domination and fear of threats of bodily harm made by Vigorito. It also now appears that a short time before the offense alleged Vigorito had in substance bought Stern's used car business and made Stern the general manager at a substantial salary with provision for further compensation by way of a one-third division of the profits of the business distributed in form of stock of the corporation formed to run the used car business.

■■ I think it unnecessary to review in detail the several particular matters advanced by counsel for the defendant in support of the motion to the extent that it is based on newly discovered evidence. I do not find that when considered singly or wholly it warrants the granting of a new trial on the principles that are very generally recognized as requisite for granting new trials on newly discovered evidence. See opinion of this court in United States v. Frankfeld, D.C., 111 F.Supp. 919, 922, affirmed Meyers v. United States, 4 Cir., 207 F.2d 413. The principles there stated were:

"'A motion based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial, (2) that the evidence is material, not merely cumulative or impeaching, (3) that it will probably produce an acquittal, and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.'"

The matters now advanced in support of the motion do not show either that (1) the evidence was really newly discovered or (2) that it would probably produce an acquittal or (3) that failure to discover it was not due to lack of diligence. On the contrary the principal point brought to my attention is clearly to the effect that much of the evidence said to have been given by Stern in the subsequent New York trial of Vigorito was well known to him at the time of the trial of his case here and that

apparently in the New York trial he in substance admitted that he had either suppressed it or at least had not advanced the evidence in his trial here because, as he put it in the New York case and at the present hearing, he was fearful of physical consequences to follow from Vigorito if he disclosed it. And at the time of the sentence, although invited to make a more particular statement if he desired before the sentence was determined and imposed, he declined to do so.

In substance it is now contended in support of the motion that Vigorito was the chief offender with respect to the theft and transportation of the motor cars involved in this case, and that Stern was the innocent agent or manager for the business of which Vigorito was the principal proprietor, and apparently much emphasis is placed in the fact that the sentence of the court against Stern was 10 years while in the New York case Vigorito received a sentence of only 5 years. It is also contended that the comparison of the testimony of Warshawsky, who was also a witness in the New York trial of Vigorito, and the testimony of Stern in that case voluntarily testifying at the instance of the Government, as compared with the testimony of these two witnesses here in Baltimore, shows differences and discrepancies which it is argued tend to support the conclusion that the trial here resulted unjustly. But I am not convinced that this is so.

Stern for some years prior to the trial in this case had been engaged in the used car business in New York City and Brooklyn, under the trade name of Stern Brothers and the N.C.D. (National Car Distributors). Getting into financial difficulties he had enlisted the support and financial assistance of Vigorito, and continued the business for Vigorito as general manager. Stern now contends that while he sold at least many of the stolen cars to the Park Circle Motor Company he did not know that they had been stolen and that while he transported some of the cars to Baltimore,

many of them were transported by other persons or at least not by himself. The only reference to the Baltimore testimony that I recall given by Stern as to Vigorito was that some time before he had sold his interest in the N.C.D. to Vigorito and another man. There was also clear evidence in the case here that Stern was in possession of the stolen motor cars and that he was unable to give and never did give at the trial here or to the F.B.I. agents when questioned upon the subject, any satisfactory explanation of how he came into possession of the cars. From my recollection of the trial and refreshing my recollection by review of the essential parts of it from the transcript of testimony, I am satisfied that the defendant had a perfectly fair trial here and that there was ample evidence before the jury tending to prove his guilt upon all counts of which he was found guilty. I do not find in the comparison of Warshawsky's evidence given here with that in the New York case brought to my attention, such conflicts as would warrant the granting of a new trial in this case.

One of the contentions now made is that Stern did not have counsel who fairly represented him independently but that his trial counsel here was really engaged by and under the influence of Vigorito to whose interest it was to have Stern convicted, as there was no pending case here against Vigorito, while the later remained practically unknown in relation to the case. On that point I have heard the testimony of Mr. Murrell, trial counsel here for Stern. Mr. Murrell was for five years or more an Assistant State's Attorney for Baltimore City. In defense of the challenge to his professional activities in the case and particularly in his alleged preparation of the defense and the lack of calling material witnesses he has stated that he was first retained and a fee of about $1,000 paid by a Congressman who retained his services on behalf of Stern, and that he had several interviews with Stern before the trial and made an ex-

tended investigation with regard to the bills of sale relating to the stolen motor cars at the office of the Commissioner of Motor Vehicles in Baltimore; but that he had never been able to get any information from Stern about the several transactions other than the general statement that he, Stern, was a legitimate business dealer; and that owing to his inability to get any particulars from Stern to support his general contention of innocence he had advised him to plead guilty which, however, Stern refused to do. Mr. Murrell also pointed out that on one or more occasions the man named Vigorito, who was referred to at the time merely as "Bob", appeared at his office with Stern and that later on Vigorito retained him and paid him a fee of $1,000 to represent one Murray who had been indicted in this court on a stolen automobile interstate transportation charge. The contention now made by new counsel for Stern is that Mr. Murrell really represented Vigorito and not Stern individually and that it was to the interest of Vigorito to have Stern suppress Vigorito's name or connection with the case and that was the reason that Mr. Murrell did not make further and closer investigation as to the facts and circumstances and was unable to and did not produce evidence on behalf of Stern individually; or, more shortly stated, that Mr. Murrell consciously sacrificed Stern's individual interest in favor of Vigorito. This, of course, is a very serious charge of professional delinquency but I do not find that the criticism is justified. It is apparent from a review of the case that Mr. Murrell had no available witnesses to support Stern but it is, I think, quite apparent from the subsequent developments referred to in connection with the New York case that Stern himself withheld from both his counsel and the court the facts and circumstances which he now seeks to advance to support his contention that it was Vigorito and not himself who was the principal offender and beneficiary of the several unlawful transactions.

As to Stern's statement that he was throughout the trial here acting under the domination and physical fear of Vigorito, it is to be noted that Mr. Murrell testified that on two or more occasions Stern did confer at length with him in his office without the presence of Vigorito. He thus had the fullest opportunity to disclose to his own counsel his relation with Vigorito but he did not do so.

█ In connection with both motions much emphasis seems to be placed on the fact that Stern, although now stated to have been only the agent of Vigorito in the almost wholesale stolen car ring, has received a much longer sentence than that received by Vigorito in the New York case. And it is now urged upon me that consideration should be given to Stern because he voluntarily furnished information and testimony in the New York case which caused Vigorito to plead guilty after Stern had testified; and the Assistant United States Attorney for the Eastern District of New York (at Brooklyn) personally attended the hearing here and stated that Stern had been of the greatest assistance to the Government in the prosecution of Vigorito. However, it is clear that under Rule 35 of the F.R.C.P., this court does not have the authority to reduce the sentence in this case as it has been much more than 60 days (indeed more than a year) since the sentence was imposed. It is quite possible that if Stern, during or after the trial here and before sentence, had informed the court of the facts which he testified to in the prosecution of Vigorito, his sentence might have been materially affected thereby. But, as above noted, Stern declined to make a more particular statement about the case than was contained in testimony as a witness here, and in substance he seems to have admitted he perjured himself in the testimony given by him in this case.

I think it unnecessary to comment at all on the comparison between the sentence imposed here and that imposed in the New York case. The sentence in each case should be considered in the

light of the facts brought to the attention of the trial judge. It is unnecessary further to point out that if the Government is satisfied from developments subsequent to the trial here that the defendant should receive a parole or a commutation of sentence under executive clemency, that is a matter as to which this court has no authority.

As an alternative to granting a new trial or vacating the sentence the present New York counsel for Stern has submitted an earnest and extended argument for reduction of the sentence of 10 years, or some other modification of the sentence such as making the second consecutive term of five years concurrent with the first five-year sentence or possibly now suspending the second five-year term and directing that the defendant be placed on probation for that period. All the contentions heretofore noted for vacation of the sentence or a new trial are again urged in this connection, together with emphasis on the alleged disparity of the respective sentences given Vigorito in the New York case and the fact that Stern has since the trial here been cooperative with and of material assistance to the Government in the prosecution of Vigorito. As to these points severally, I comment as follows.

█ The unsubstantiated criticism by counsel of the fairness of the United States Attorney, Mr. Flynn who prosecuted this case for the Government and who is now out of office after 19 years service, and the unfounded attack upon the integrity of Stern's trial counsel here, certainly are not persuasive for present leniency to the defendant Stern. The excuse now offered by Stern for his perjury as a witness in the case here that it was due to the dominance and violent threats of Vigorito before and during the trial, is based almost entirely upon the present personal statement of Stern, and apparently was not communicated by him to others until long after the sentence was imposed here, although some support is offered for his statement based on a printed article of the F.B.I. published years ago in an unofficial commercial publication, with respect to the reputation of Vigorito. As Stern had very ample opportunity before his trial to have disclosed his real relation with Vigorito to his own counsel and neglected to do so and further did not call the matter to the attention of this court when he had the opportunity to do so at the time of sentence, I am not disposed to think that his relations with Vigorito as now disclosed by him are sufficient of themselves to warrant a change in the sentence, which was, I think, correct at the time on the facts appearing at the trial of the case. The only meritorious consideration for some modification of the sentence, if I have the power to do so, lies in the subsequent cooperation of the defendant with the Government in the prosecution of Vigorito.

If it be assumed that this cooperation, although belated, is sufficient to justify a modification of the sentence, the question remains whether under the applicable rules of criminal procedure the court now at this time has the power and authority to make the change. If regarded as a reduction of the sentence rule 35 as above noted is to the contrary. At common law the court lost jurisdiction to reduce sentences in a criminal case at the expiration of the term. Rule 35 is a modern substitute for that former rule. It is suggested by present counsel for Stern that if this court would now reduce the sentence the Government would not appeal; but I do not feel free to act in disregard of the rule on that ground. Furthermore, as has already been noted, Stern will be eligible for parole if deemed proper by the United States Parole Board at the expiration of one-third of the ten-year sentence, that is within about 18 months. I assume that if the Government feels that Stern has been cooperative and helpful that fact will be brought appropriately to the attention of the Parole Board and it may be influential in bringing about Stern's release on parole about that time. As to this, of course, the court

has no present authority and if consulted by the Parole Board would have no objection to interpose.

■ As to suggestion of counsel for the defendant that the sentence be now modified so that the second five-year term be made concurrent with the first five-year term, I do not think the court has the power to make this change at this time as in effect it would be a reduction in the sentence contrary to rule 35.

There is, however, a still further point of criminal procedure which may be worthy of consideration in this connection. Although I think the court does not have authority presently to reduce the sentence or to make the second five-year term concurrent with the first, there is the possibility that the second consecutive five-year term might be suspended and the defendant placed on probation. It was held by the 9th Circuit in the case of Kirk v. United States, 185 F.2d 185, that with regard to a similar sentence the district judge who imposed the sentence did have authority to suspend the second and consecutive term at any time before the expiration of the first term. But I note that in a later, and so far as I know the latest, case upon the same point it was held to the contrary by the 8th Circuit in an opinion by Circuit Judge Sanborn (one judge dissenting), Phillips v. United States, 212 F.2d 327. As this latter case was decided only in May last, I have not learned whether application has been made to the Supreme Court for certiorari although I note that Judge Sanborn, after a very full discussion of the applicable procedural law under the federal probation system, expressed the hope that the divergence between the two Circuits on this important procedural point would be determined by the Supreme Court. I may add that the view of the applicable law stated in Judge Sanborn's opinion is that which has been understood and I think consistently applied in this court. If certiorari should be applied for and granted in that case it would seem probable there would be a

final decision on the point by the Supreme Court within a year or less and before the expiration of the first five-year term of the sentence here. If it should be determined by the Supreme Court that the conclusion of the 9th Circuit is correct and the district judge has the power to suspend a second consecutive term *at any time* prior to the expiration of the first term, or if the question remains an open one, it would be possible for counsel for Stern hereafter, and before the expiration of the first five-year term, to file a motion for modification of the sentence originally imposed to the end that the second five-year term be suspended and probation granted to Stern. In that event it may be important to learn whether Stern has been released on parole.

It is now Ordered this 3d day of August, 1954 by the United States District Court for the District of Maryland that the defendant's motions for a new trial and for vacation of sentence are hereby *overruled*, and the defendant's motions for reduction or modification of sentence are likewise *overruled at this time without prejudice.*