## ARCHER v. SNOOK, Warden.

(District Court, N. D. Georgia. February 9, 1926.)

No. 86.

**1. Criminal law ⬳1216(1)—Prisoner sentenced to two years, with provision for probation after six months, cannot be discharged as having fully served his sentence.**

Prisoner sentenced to two years' imprisonment, with provision that he was to be released on probation after serving six months, cannot be discharged as having already fully served his sentence at the end of six months.

**2. Criminal law ⬳1001—Indefiniteness of length of probation is not in itself fatal.**

Indefiniteness of provision for suspending balance of two-year sentence after six months, which does not specify length of probation to follow, is not in itself fatal, if probation is otherwise validly provided for.

**3. Criminal law ⬳1001—Probation will not fail for lack of definiteness in its original conditions.**

A probation will not fail for lack of definiteness in its original conditions, but these can be supplied and altered as may be needed from time to time.

**4. Criminal law ⬳996(2)—District Court is not justified in altering sentence in course of execution to provide for carrying out terms of probation.**

District Court, which imposed sentence of two years' imprisonment, with provision for release on probation after six months, under Act March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), is not justified in later, after execution of a penitentiary sentence had been commenced, seeking to alter the substance of the sentence, so as to provide for carrying out the terms of probation.

**5. Pardon ⬳4—Probation law held not in conflict with pardoning power.**

Probation Act (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c) held not in conflict with pardoning power.

**6. Criminal law ⬳1001—"Sentence," as used in probation law, is used in opposition to probation.**

The term "sentence," as used in Probation Act (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), is used in opposition to probation, and means a sentence to the punishments formerly in vogue.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sentence.]

**7. Criminal law ⬳1001—District Court cannot impose imprisonment sentence, and provide for its suspension and for probation after partly executed.**

Under Probation Act (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), District Court may make payment of fine condition of probation, but may not make imprisonment under the sentence such; hence it cannot impose an imprisonment sentence, and provide for its suspension and for probation after it is partly executed.

Habeas Corpus. Application by J. H. Archer for a writ directed against J. W. Snook, Warden. Application denied.

Jackson & Moore, of Atlanta, Ga., for petitioner.

John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for warden.

SIBLEY, District Judge. On July 31, 1925, Archer was sentenced in this court for an offense against the narcotic laws, to serve 2 years in the penitentiary at Atlanta, but after serving 6 months thereof to be released on probation, under the Act approved March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c). The 6 months having expired, he applies by habeas corpus for release; the application being resisted by the warden on the ground that the suspension provided in the sentence was beyond the power of the judge.

[1] 1. The sentence is one for 2 years' imprisonment in the penitentiary, and not one for 6 months only. The prisoner was properly received in the penitentiary as one whose sentence exceeds a year. The expressed intent that only 6 months of it should be presently served does not change the character of the sentence. The provision for release is in form and substance an effort to interrupt the execution of 18 months of a lawfully imposed term of 2 years. The applicant cannot be discharged, therefore, as having already fully served his sentence.

[2, 3] 2. The provision for suspension does not fix the length of the probation to follow, nor specify any conditions, save that monthly reports are to be made to T. E. Middlebrooks, narcotic officer in charge, as probation officer in this case. This indefiniteness is not in itself fatal, if probation is otherwise validly provided for. The act contemplates great flexibility in the conduct of a probation, and it would be possible and proper for the judge now to supply any necessary terms concerning it. A probation will not fail for lack of definiteness in its original conditions, but these can be supplied and altered as may be needed from time to time.

[4] 3. As this court imposed this sentence, and is now called upon to see that it be carried out, it is suggested that, if the original provision for probation was improper, the court may now suspend the sentence and order a probation. The act was construed in Nix v. United States (C. C. A.) 4 F.(2d) 652, and held to be a remedial statute, and entitled to a liberal construction, and, since no limit of time after plea or verdict was named for ordering a probation, that one might be ordered after the judgment term as respects a penitentiary sentence made before the act was passed, but which by reason of an appeal had not gone into execution. The court was careful, however, to say that nothing ruled was to be taken as applying to a

sentence execution of which had commenced. Judge Henning, in a thoughtful opinion, made in carrying out the court's mandate (8 F.[2d] 759), refused probation, but suggested that application therefor might be considered after service of a year of the sentence.

I am convinced that such a procedure, at least in the case of a penitentiary sentence, is unwarranted. The penitentiaries are at a great distance from most of the judges. It would involve much complication to place persons on probation after arrival at the penitentiary. By their incarceration, the shame, stigma, and criminal contact, which the probation system sought in proper cases to avoid, will have already been accomplished. The existing provision for paroles is sufficient to meet most cases deserving of leniency. The limitations on the power of the court to alter a sentence, even during the term, when it has gone into execution, are well recognized. See 12 Cyc. 783; In re Lange, 18 Wall. 163, 21 L. Ed. 872. The interference by a judge with a closed sentence, after the prisoner has been delivered in execution to the executive authority, is at least so close to an exercise of the pardoning power, which is held to include commutations and conditional pardons (United States v. Wilson, 7 Pet. 150, 8 L. Ed. 640; In re Wells, 18 How. 307, 15 L. Ed. 421), that it should not be attempted, unless on the clearest legislative warrant. I find nothing in the Probation Act to justify me in now seeking to alter the substance of this or any other sentence which is in course of execution in the penitentiary.

4. The case must therefore turn on the question whether, at the time of imposing the penitentiary sentence, the court may provide for its future suspension after partial execution. No such power at common law has been shown. Aside from statute, indefinite suspension of a part of a lawful sentence would seem to labor under the same condemnation applying to a suspension of the whole. Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355. The power, if it exists, must be derived from the source claimed in this sentence, to wit, the Act of March 4, 1925, establishing a system of probation. The grant of power there is thus phrased:

"The courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant,

will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant upon probation in the manner aforesaid. The court may revoke or modify any condition of probation, or may change the period of probation: provided, that the period of probation, together with any extension thereof, shall not exceed five years."

[5-7] The power to suspend the imposition or the execution of sentences is not general, but exists only as defined by the statute. It arises when (1) the ends of justice and the best interest of the public, as well as of the defendant, will be subserved thereby, and (2) after an ascertainment of actual guilt of a crime not punishable by death or life imprisonment. The power again is not absolute, but the suspension must be accompanied by the establishment of a condition of probation. The probation described in the act is not pardon. It is not complete liberty, and may be far from it. It is really a new mode of punishment, to be applied by the judge in a proper case, in substitution of the imprisonment and fine prescribed by the criminal laws. For this reason its application is as purely a judicial act as any other sentence carrying out the law deemed applicable to the offense. The executive act of pardon, on the contrary, is against the criminal law, which binds and directs the judges, or rather is outside of and above it. There is thus no conflict with the pardoning power, and no possible unconstitutionality of the Probation Act for this cause. Though imposition of probation is thus really a sentence to punishment, yet in this act the term "sentence" is used in opposition to "probation," and means a sentence to the punishments formerly in vogue. When "sentence" is suspended and "probation" substituted, fines and imprisonment are excluded, except as they may be included in the probation. The probation is, however, to be "for such period and upon such terms and conditions as they [the courts] may deem best."

This broad language might have been considered sufficient to permit making the payment of a fine or the suffering of an imprisonment one of the conditions of the probation. But that such was not the meaning of Congress appears from the immediately following words: Or "may impose a fine and may also place the defendant upon probation in the manner aforesaid." This makes it clear that probation "in the manner aforesaid" could not have included the payment of a fine. Much less could it include an imprisonment, to prevent which, in proper cases, was the main object of the law. Succeeding sentences of the law mention a variety of things which may be required of the probationer, but imprisonment is not among them. It may come only on revoking the probation. The court, therefore, after ascertainment of guilt, must, with no other delays than have heretofore been permissible, either suspend sentence and establish probation, which may, if unsuccessful, be revoked and sentence then pronounced, or may pronounce the sentence ordinarily appropriate to the offense, but before it goes into execution may suspend it, and establish in lieu of it probation, subject to revocation and execution of the sentence later. It may, by express provision of the act, in any probation, make the payment of a fine a condition of it, but in none may it make imprisonment under the sentence such. It cannot, therefore, impose an imprisonment sentence, and provide for its suspension and for probation after it is partly executed. This applicant, therefore, cannot have his discharge on the attempt to provide therefor in this sentence, but must place his case before the parol board.

It may not be improper to add that Archer was shown at the time of sentence to be an opium addict, who was a criminal probably only because of his habit. It appeared to the court that his own interests would best be served, not by his immediate probation, because he was helpless in the toils of his vice, but by a six months penitentiary confinement, which experience has abundantly shown would relieve him of his habit and restore him to health. The sentence was made longer, both in order to get him into the penitentiary and to have a considerable portion of it left hanging over him to insure his good behavior and an avoidance of temptation, so generally fatal to those situated as he is. This program seemed also best to serve the public interests and to accomplish the ends of justice in making a warning to others. I hope these considerations will appeal to the parole board also, as I should not have imposed so long a sentence, had I expected it to be fully served, without opportunity to demonstrate a reformation.

Similarly as to misdemeanors, such as of-

fenses against the prohibition law. I often find a young man, not really criminal at heart, but who needs a firm and decided check. A fine is no punishment for profitable crime, but rather stimulates to a return to it to retrieve the loss or pay back the money borrowed to pay the fine. A few days or weeks of confinement, with nothing to do but think, not in a penitentiary or crowded city prison, but in an almost tenantless rural jail, does far more to bring him to his senses, and to impress his companions, than any other thing will. If several months of such a sentence could be kept suspended over him afterwards, while on an informal five-year probation, it would practically insure his good conduct. It is far more effective than fear of a second offense, for as·to that he must be discovered and convicted, with the many chances of escape involved, but a suspended sentence may fall upon him if and when his general conduct and reputation becomes such as to satisfy the judge that his probation is a failure.

Again, probation after partial service would solve many problems of needy dependents that now distress the judge. It may be that the present law can be so construed as to enable the judge to suspend jail sentences after partial execution since there is no complication with the Parole Law (Comp. St. § 10535 et seq.), and since the jails, by common understanding and practice, are under the control of the judge, as the penitentiaries and reformatories are, by statute, under the control of the Department of Justice. This question, however, must remain open.

The present case involves the penitentiary, and the holding must be that the attempt to provide for a future suspension of a penitentiary sentence is unauthorized by law. ·