# MELVIN AUGUSTUS JACKSON *v.* STATE OF MARYLAND

[No. 672, September Term, 1970.]

*Decided September 1, 1971.*

The cause was argued before THOMPSON, MOYLAN and CARTER, JJ.

*Saul J. McGrane* for appellant.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur*

*A. Marshall, Jr., State's Attorney for Prince George's County,* and *Edmond B. O'Connell, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant was convicted by the Circuit Court for Prince George's County, sitting without a jury, of armed robbery and sentenced to ten years in prison. He appeals from this judgment claiming that the trial court committed reversible error because: (1) it improperly admitted in evidence both a judicial and an extrajudicial photographic identification of him in violation of the due process clause of the Fourteenth Amendment, and (2) it improperly admitted a confession in evidence.

The record shows that on November 7, 1969, Mr. Cole, the clerk at Broadway Decorators in Prince George's County, was in the process of placing approximately $1700 in pay envelopes for distribution of the Company payroll when two men walked into the establishment. One of the men brandished a gun, ordered Cole to put up his hands, and directed Mr. DeSarno, a partner in the business and two other employees to lie on the floor. The gunman then ordered his associate to take possession of the money, which was accomplished and the robbers departed. DeSarno testified that the man with the gun was wearing a french beret and had the lower part of his face, from his eyes down, covered with a bandana. He further stated that he was within five feet of this person for approximately ten to fifteen minutes during the robbery, was able to get a good look at him, and recognized him as the person he had seen in his place of business some half a dozen times immediately prior to the robbery with one Albert Douglas, his former employee.[1]

---

1. Douglas had been fired a week before the hold-up and was re-hired by DeSarno within two days after the incident to acquire information regarding the identity of the gunman. After he was re-hired, Douglas was vague in his information concerning the name and other identifying information about his companion.

On the day of the crime, the police showed DeSarno several hundred pictures from the mug books at police headquarters, none of which could be identified by him. On January 7, 1970, the police showed him seven black and white photographs of Negro males from which he identified the appellant and his brother as resembling the gunman, but did not then make a positive identification. On March 2, 1970, immediately following indictment of the appellant and his brother, DeSarno was shown fifteen color photographs of Negro males from which he made a positive identification of the appellant as the gunman who committed the robbery.

Promptly after indictment, the appellant was arrested, taken to the County jail and placed in a cell with his co-defendant brother. When the brother saw him, he exclaimed in the presence of others, "That's the one that got me locked up. That's my brother." Soon after the appellant was placed in the cell with his brother, both he and his brother sent for Detective Daniels, who promptly arrived at the County jail. Upon his arrival, the Detective was informed by the appellant that he wished to talk to him about his brother not being implicated in the robbery. Within less than an hour thereafter, the appellant gave a verbal statement to the Detective, implicating himself in the crime and exonerating his brother from any participation. The statement was made in the presence of the brother who had been upset about being charged with the crime. A full explanation of the constitutional rights of the appellant was made to him in accordance with the requirements of *Miranda v. Arizona*, 384 U. S. 436, after which he stated he understood these rights, read and signed the warning card containing them, and agreed to make and did make the statement that was admitted in evidence over objection.

## I.

The appellant contends that the extrajudicial identification made in selecting a photograph of him was so unnecessarily suggestive and conducive to irreparable mis-

taken identity as to deny him due process of law. We find nothing in the record even remotely indicating impermissible suggestiveness in showing the photographs to DeSarno. The mere fact that DeSarno was unable to make a positive identification until he had viewed well over a hundred photographs obviously does not *per se* taint the photographic identification finally made by him. Nor do we find merit in appellant's claim that the photographic identification was inadmissible in evidence because the trial judge, sitting as the trier of fact, did not have before him, for comparison purposes, any of the other photographs shown to DeSarno. The burden, of course, rests with the appellant to establish *prima facie* that the procedure employed in showing the photographs was so unnecessarily suggestive as to likely produce irreparable misidentification. Appellant did not meet that burden and we find no error in the admission of the extrajudicial identification in evidence. Since the extrajudicial identification was legal, it could not constitutionally taint the judicial identification. Moreover, we note, as did the trial judge, that DeSarno had seen appellant six times in his place of business prior to the crime and that even though appellant was partially masked, he closely observed him for approximately fifteen minutes and thereby recognized him. Under these circumstances, that the in-court identification was independent of the photographic identification would seem clear.[2]

## II.

In regard to the free and voluntary character of the appellant's confession, the record shows that he sent for

---

2. Appellant also suggests that his in-court identification was illegal because, at the time it was made, he was seated at the defense table with his attorney and he was the obvious person to be identified. The question was not raised below and we do not now consider it. Md. Rule 1085. See also *Bailey v. State*, 6 Md. App. 496, noting that the fact an accused was identified while seated at the trial table goes to the weight of the identification, and not its admissibility; and that had a request been made, the court might have arranged to seat the accused among the spectators in the courtroom until the in-court identification was made.

Detective Daniels and when he arrived, informed him he desired to talk about his brother not being implicated. The fact that he invited the Detective to come see him is an important factor to be considered in determining the voluntary character of the ensuing incriminatory statement. *King v. State,* 5 Md. App. 652, 673. The appellant was fully warned of his constitutional rights pursuant to the requirements of *Miranda v. Arizona, supra,* prior to the giving of his statement to the police and with full knowledge thereof, he agreed to give his statement. His principal contention seems to be that his statement was psychologically pressured by the fact that his brother was in custody for a crime which he did not commit, thus impelling him to give the confession in order to release his brother. The appellant testified the Detective told him if he would confess, he would free his brother. The Detective categorically denied any such statement or having made any promises for or threats against the brother as an inducement for the appellant's statement.

In *Jones v. State,* 229 Md. 165 (1962) the Court in speaking of the effect of a confession being motivated by the purpose of protecting a relative, said at p. 172:

> "Even if the defendant believed that his common law wife would not be held if he confessed, the confession was not thereby rendered involuntary or inadmissible merely because it was made to release another from suspicion of guilt: there must also be sufficient evidence that the confession was actually induced by a threat or promise or other cause. * * * In *Rogers v. State,* 89 Md. 424, 43 Atl. 922 (1899) where the defendant confessed after his sister, who was also in custody but claimed she was innocent * * * it was held that the evidence was insufficient to support the claim that the confession was made as a result of threats and inducements where the testimony of the defendant had been contradicted by the police officers. * * *"

In an annotation dealing with this subject in 80 ALR 2d 1428 at 1438, it is stated:

> "It is well recognized that a confession is 'involuntary' in the constitutional sense so as to be inadmissible in evidence, only where it was produced by wrongful pressure applied by officials or others acting for, or whose actions were adopted by, the prosecuting authority. Accordingly the cases have held that a confession or admission is not inadmissible in evidence merely because accused, in making it, was motivated by his desire to protect a relative in police custody or threatened with arrest, or where the proposition as to the protection of the relative was not suggested by the police but originated with accused." (See also 29 Am. Jur. 2d titled 'Evidence' § 562.)

We hold therefore that the mere fact that the appellant may have been motivated to make his confession in order to bring about the release of his brother from police custody is not *per se* sufficient to make the confession involuntary. In so concluding, we note that the conflict between the testimony of the appellant and that of police officer concerning any promises made to appellant in return for his confession presented an issue of fact which the court, as trier of fact, resolved against the appellant.[3]

*Judgment affirmed.*

---

3. Appellant also claims that he did not waive his right to remain silent and to have counsel prior to giving his confession. The record reveals to the contrary. Appellant signed a waiver of such rights under circumstances clearly indicating that he fully understood his *Miranda* rights but nevertheless wanted to make a statement. See *Anderson v. State*, 6 Md. App. 688; *Brown v. State*, 3 Md. App. 313.