Michael B. SPRAGUE, Appellant,

v.

STATE of Alaska, Appellee.

No. 3521.

Supreme Court of Alaska.

Feb. 2, 1979.

Dana Fabe, Sue Ellen Tatter, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

■ Michael Sprague and a companion, Karl Sinclair, were arrested on charges of burglary. A motion to suppress admissions made by Sprague to police officers approximately two weeks before he was arrested was denied, and Sprague subsequently pled nolo contendere. The trial court accepted the plea with the express condition that Sprague preserved his rights to appeal the suppression decision and the sentence.[1] We affirm the judgment, finding no error in the trial court's ruling that Sprague's statements did not constitute involuntary admissions or confessions. With respect to the sentence, we invalidate certain conditions of Sprague's probation, and remand to the superior court for resentencing.

Based on information given by a citizen informant who described two men and a vehicle which she thought may have been involved in an attempt to burglarize her house, Alaska State Troopers Barnard and

---

1. A plea of nolo contendere normally waives all non-jurisdictional defects in a case. *Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974). Our decision in *Cooksey* established that two conditions must be met in order to preserve a limited right of appeal following a plea: (1) the defendant's plea must be explicitly conditioned upon his reserved right of appeal; and (2) the issue reserved must be such that, if the defendant were to prevail upon appeal, he would be entitled to dismissal of the indictment and further prosecution would be barred. *Id.* *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978) (emphasis supplied) held that "[h]enceforth, appeals under the *Cooksey* doctrine will not be approved unless it is clearly shown, *and the parties have stipulated with trial court approval*" that the second condition has been met. The plea in the present case was entered before *Oveson* was decided; therefore, it is sufficient, under *Cooksey*, that the suppression of Sprague's statements would have been fatal to the state's case, without the necessity of executing a stipulation between the parties and securing the approval of the court. *See Klenke v. State*, 581 P.2d 1119, 1120 n. 3 (Alaska 1978).

Flothe first confronted Michael Sprague and Karl Sinclair as they were unloading their car in a residential area at approximately 1:30 p. m. on January 11, 1977. The troopers asked Sprague and Sinclair for identification, which they produced. Officer Flothe then asked Sprague why he had gone to the informant's house. Sprague replied that he was looking for a friend. No further investigation took place at that time and neither suspect was given a *Miranda* warning.[2]

Later that day, Officers Flothe and Barnard investigated a burglary of another residence and gathered information and a description which matched Sinclair's car. The troopers proceeded to Sprague's residence at around 9 p. m. and interviewed Sprague while he was home alone. Officer Barnard advised Sprague of his *Miranda* rights from memory[3] and described the evidence the police had against him for the burglary. According to Barnard, Sprague then made admissions of involvement in the burglary. Barnard told defendant Sprague that while there was probable cause to arrest him that night, if he would cooperate in returning the stolen property the officers would not arrest him immediately but would, instead,

forward the police reports indicating his cooperation to the district attorney's office.

Sprague agreed to cooperate and see that the stolen goods were returned. He apparently believed that if he returned the property no charges would be brought against him.[4] He did not have the stolen goods with him but he agreed that the officers could return to his apartment in two hours to pick them up.

Sinclair was present when the officers returned to Sprague's residence at 11 p. m. the same night. Most of the stolen property was returned and Sprague and Sinclair stated that they would come to the troopers' office on the following afternoon to deliver the remainder of the goods. No *Miranda* warnings were read at this time.

Sprague and Sinclair went to the troopers' office the next day to return the remainder of the stolen property. Officer Flothe advised Sprague of his rights from a waiver of rights form, which Sprague subsequently initialed. Sprague again admitted his involvement in the burglary.

Approximately two weeks later Sprague and Sinclair were arrested on warrants for burglary.

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), laid down the federal constitutional prerequisites to the admissibility of statements made by a defendant during a custodial interrogation:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

**3.** Officer Barnard testified at the suppression hearing as follows:

> I advised [Sprague] that he had a right to remain silent, that anything he said could and would be used against him in a court of law, that he had a right to an attorney and that if he could not afford an attorney one would be appointed to him. Then I asked him, do you understand these rights, and he indicated that he did.

**4.** Sprague did not testify at the suppression hearing, but his affidavit which was before the court stated in part:

1. On January 11, 1977, at approximately 8:30 P.M. two Alaska State Troopers came to my residence at 2535 W. 69th, # 2, Anchorage, Alaska. When I opened the door, Officer Flothe told me that he had arrest papers for me but it was up to me whether or not he would serve them. I asked him what he meant by that and he stated, 'We're not out to bust you, we just want to get everything back.' He said that if I gave all the stolen items to him, he would not prosecute me. He then read a list of items that he said had been taken from a house earlier that day. He asked me if I had them and I told him I did not. Then he asked me if I could get the items and I said that I could. He wanted me to get the items right away, but I said that it would take at least a couple of hours. Then he said that he would come back to the house in two hours to pick up the stolen items.

2. During this time neither of the officers served me with an arrest warrant, nor did either tell me that I was under arrest. I was led to believe that if I returned the stolen property, no charges would be brought against me.

■ Sprague argues that he was denied constitutional due process [5] because his admissions and confessions were involuntary, induced by promises of leniency or immunity made by the state troopers who interviewed him. A statement of involvement in criminal activity is not admissible unless it is voluntary. *E. g., Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In determining whether a confession is voluntary or is the "product of a mind overborne by coercion," this court has previously stated that it will consider the "totality of circumstances surrounding the confession" [6] and conduct an independent review of the record. *Ladd v. State*, 568 P.2d 960, 967 (Alaska 1977); *Schade v. State*, 512 P.2d 907, 916 (Alaska 1973). *See Hampton v. State*, 569 P.2d 138, 144 (Alaska 1977). The prosecution has the burden of showing that there is sufficient evidence to support a determination, by a preponderance of the evidence, that the admission or confession was voluntary.[7]

■ Sprague's contention that his admissions and confessions were made only after he was promised that he would not be prosecuted if he cooperated is simply not supported by the evidence in the record. Officer Barnard testified that after the two troopers confronted Sprague at his home at around 9 p. m. on January 11 and explained the evidence against him for the burglary, and Officer Barnard gave Sprague his *Miranda* warnings, the order of the events was as follows:

Q. What happened after you explained your case, basically?

A. Then I indicated—he indicated to me that yes, he was, in fact, responsible for the crime, and he indicated that there—there was somebody else. He alluded to another person that he didn't want—he—I got the impression he didn't want involved, or, you know, want to be named, and I—I went on to say—tell him that as—as law enforcement officers we were obligated to investigate the case and refer it for prosecution, but as an option or as a discretionary thing, we—the only thing we could do at this point—we could either arrest him on the spot for probable cause for the crime of burglary, or depending on his degree of cooperation and the returning—or the attempt to return stolen property, that our other option would be not to arrest him at this point and refer the case to the

---

5. Due process is guaranteed by the 14th Amendment to the United States Constitution and by article 1, section 7 of the Alaska Constitution.

Superior Court Judge Ralph E. Moody decided the suppression motion.

6. The Supreme Court has articulated the test for voluntariness of a confession as follows:

But a confession in order to be admissible must be free and voluntary; that is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight nor by the exertion of any improper influence.

*Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573 (1897). This holding has been frequently reiterated. *E. g., Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197 (1976); *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964); *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 759 (1970). In applying this test, courts have consistently looked to the totality of the circumstances surrounding the making of the confession. *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir. 1967), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225, and cases cited therein. *See also United States v. Frazier*, 434 F.2d 994 (5th Cir. 1970); *United States v. Arcediano*, 371 F.Supp. 457, 469 (D.D.C.1974); *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051, 1058–59 (1976).

7. The federal constitutional standard is that the state must prove voluntariness by a preponderance of the evidence, although the states are free to adopt higher standards. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972). This court applied the preponderance of the evidence standard in *Schade v. State*, 512 P.2d 907, 917 (Alaska 1973). Appellant Sprague does not argue for the adoption of a higher standard.

district attorney's office for—for whatever may come out of it . . .[8] Officer Flothe also testified that he believed Sprague admitted the burglary before the discussion with Officer Barnard about not arresting him immediately if he cooperated in returning the stolen property, but Flothe admitted on cross-examination that the confession could have come after the discussion about the arrest.

The sequence of events at the 9 p. m. confrontation with Sprague is critical to his claim that his confession was induced by the promise not to arrest. Sprague did not testify at the hearing on the motion to suppress and his affidavit is ambiguous about when he admitted his involvement in the burglary in relation to when the agreement regarding his cooperation in return for not being arrested that night was made.[9] Based on this record of the events, we must conclude that the confession came before any agreement about the return of the stolen goods. Thus, we find that Sprague's admissions of guilt were not the product of any improper promises on the part of the investigating officers.

 Despite the absence of improper promises to elicit Sprague's admissions and confessions, we must examine the words and actions of the state troopers to determine whether they were sufficient to overbear Sprague's free will. *Ladd v. State,* 568 P.2d 960, 967 (Alaska 1977). The totality of the circumstances surrounding the confession must be considered. "Relevant criteria are the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Brown v. United States,* 356 F.2d 230, 232 (10th Cir. 1966). *See Peterson v. State,* 562 P.2d 1350, 1363 (Alaska 1977). At the time of the incident Sprague was 19 years old. He was a high school graduate and had been living away from home for over two years. No claim has been made that he was mentally incompetent at the time of the confrontations on January 11, or that he was under the influence of drugs or alcohol. Sprague had previously been convicted of malicious destruction but this was not brought out at the time of the suppression hearing. He was not subjected to any prolonged or exhaustive questioning or any physical or psychological coercion and he was given *Miranda* warnings at the outset of the conversation with the police officers.[10] There is adequate evidence to support the trial court's finding that Sprague's confession was made freely and voluntarily and not as a result of any overbearing of his will.[11]

Sprague also appeals three conditions of probation which were imposed by Superior Court Judge J. Justin Ripley as part of a suspended imposition of sentence. Sprague contends that the conditions were beyond the jurisdiction of the sentencing court and in violation of his constitutional rights to due process.[12] The first of these required

8. On redirect examination, Officer Barnard testified:

Again, we laid the case—basic case out on him and we told him that the evidence was very strong against him, in fact, strong enough for him to be arrested. Then he admitted or made admissions to the crime.

9. *See* note 6, *supra.* The trial court did not make a clear ruling on this factual issue. Judge Moody merely concluded: "[The defendants] were cooperative and they probably . . will be given some consideration, but . . . I didn't gather any of this as being any promises of them giving any statements at this time."

10. Though *Miranda* warnings are not determinative of the voluntariness of a confession, they are one factor to be considered in the "totality of circumstances" approach to determining voluntariness. *See Hampton v. State,* 569 P.2d 138 (Alaska 1977); *State v. Hilpipre,* 242 N.W.2d 306 (Iowa 1976); *Jackson v. Maryland,* 13 Md.App. 31, 280 A.2d 914 (1971); *State v. Wallace,* 59 Wis.2d 66, 207 N.W.2d 855 (1973).

11. Our conclusion that the confession made at the 9 p. m. meeting on January 11 was voluntary renders it unnecessary for us to consider appellant's further arguments that his subsequent confessions were tainted by improper inducement of the first confession.

12. This court has jurisdiction to decide this part of Sprague's appeal under Alaska R.Crim.P. 35(a) and (b). *Cf. Brown v. State,* 559 P.2d 107, 108 n. 3 (Alaska 1977).

Sprague to pay to the victim of the burglary, in addition to $210 which was to cover the actual cost of a door broken during the burglary, a $1,000 punitive payment. With respect to the $1,000, the superior court stated:

> In addition, for a period of 10 months, as a condition of probation . . . you will pay $100.00 per month through the probation officer to the victim in this crime. . . . [F]or 10 months, every month, you're going to at least think about what he must have thought when he came home and found his door caved in.

The state legislature has conferred broad discretionary powers on the sentencing court to establish conditions of probation when imposition of sentence is to be deferred.[13] AS 12.55.100(a) more specifically provides with respect to conditions of probation:

> While on probation and among the conditions of probation, the defendant may be required
>
> (1) to pay a fine in one or several sums;

(2) to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which conviction was had; . . . .

We must construe this statute in accordance with the principle of statutory construction *expressio unius est exclusio alterius*, specifically that in a statutory scheme the exclusion of absent remedies is to be inferred from the inclusion of specified remedies.[14] The $1,000 payment imposed on Sprague is obviously not in the form of restitution for actual damages under subsection (2) of AS 12.55.100(a). The state urges, however, that the payment of the punitive award to the victim should be characterized as a fine.[15] A fine is a monetary sum payable directly to the public treasury and is a penalty generically distinct from restitution or reparation to the victim in a criminal case. *See State v. Garner*, 115 Ariz. 579, 566 P.2d 1055, 1057 (App.1977); *State v. Gunderson*, 74 Wash.2d 226, 444 P.2d 156 (1968). Punitive damages payable to the victim simply are not authorized by AS 12.55.100.[16] The case is therefore remanded to the trial court with directions to vacate the punitive payments condition of

---

13. AS 12.55.085 provides, in part:
 *Suspending imposition of sentence.* (a) If it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of sentence and may direct that the suspension continue for a period of time, not exceeding the maximum term of sentence which may be imposed, and upon the terms and conditions which the court determines, and shall place the person on probation, under the charge and supervision of the probation officer of the court during the suspension.

14. 2A C. Sands, Sutherland Statutory Construction § 47.23, at 123 (4th ed. 1973). We note also the familiar rule of statutory construction that a specific provision will govern even though general provisions, standing alone, would include the same subject. *Karrell v. United States*, 181 F.2d 981, 986–87 (9th Cir. 1950), *cert. denied*, 340 U.S. 981, 71 S.Ct. 206, 95 L.Ed. 646 (1950); *Bailey v. Superior Court*, 19 Cal.3d 970, 140 Cal.Rptr. 669, 673, n.8, 568 P.2d 394, 398 n.8 (1977); *State v. Walls*, 81 Wash.2d 618, 503 P.2d 1068, 1070 (1972).

15. The state points to this court's opinion in *Brown v. State*, 559 P.2d 107, 110 (Alaska 1977), as support for its view. In *Brown* we found that AS 12.55.100(a)(1) permits a fine as part of probation even where the crime is not punishable by a fine but only by imprisonment. In so finding, we recognized "the need for flexibility on the part of the sentencing court in fashioning appropriate conditions [for] probation," but we also found specific statutory authorization in AS 12.55.100(a)(1) for the imposition of a fine as a condition of probation.

16. AS 12.55.100 provides in full:
 *Conditions of probation.* (a) While on probation and among the conditions of probation, the defendant may be required
 (1) to pay a fine in one or several sums;
 (2) to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which conviction was had; and
 (3) to provide for the support of any persons for whose support he is legally responsible.
 (b) The defendant's liability for a fine or other punishment imposed as to which probation is granted shall be fully discharged by the fulfillment of the terms and conditions of probation.

probation. In accordance with *Brown v. State*, 559 P.2d 107, 110 (Alaska 1977), however, the superior court may determine upon resentencing whether a fine payable to the state treasury should be imposed.[17]

■ The second condition of probation which Sprague has challenged is the following:

*SPECIAL CONDITIONS OF PROBATION*

1. You [Sprague] are required to serve sixty (60) days in a correctional facility. You are to be eligible to receive the same rights and privileges as those granted to sentenced prisoners, during your period of incarceration, with the exception of parole.

2. The above sixty (60) days is suspended on the condition that the probation officer may in his discretion require the defendant to surrender himself to custody for a period not to exceed ten (10) days for any infraction of probation which does not, in the probation officer's judgment, require that probation be revoked and sentence imposed.

3. Upon incarceration of the defendant for any ten (10) day period, the probation officer shall immediately advise the Court in writing of the reasons for his action, which reasons will be reviewed for sufficiency by the Court, and a hearing upon the sufficiency thereof shall be had in the Court's discretion.

4. The time at which Criminal Rule 35(a) commences as to each ten day period shall be the first day of incarceration.

17. *See* note 15, *supra.*

18. AS 12.55.110 provides:

*Notice and grounds for revocation of suspension.* When sentence has been suspended, it shall not be revoked except for good cause shown. In all proceedings for the revocation of a suspended sentence, the defendant is entitled to reasonable notice and the right to be represented by counsel.

19. We note, however, that the definition of probation in AS 33.05.080(1) contemplates "a procedure under which a defendant . . . *is released* by the superior court subject to conditions imposed by the court . . . ." (emphasis added)

Sprague argues that conditioning his probation on 10 day periods of incarceration in the discretion of the probation officer results in revocation of probation without due process of law, specifically the right to a hearing with reasonable notice and the right to counsel under *Alex v. State*, 484 P.2d 677 (Alaska 1971), and AS 12.55.110.[18] *See Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 666 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484, 496 (1972). While noting that we perceive serious constitutional barriers to imposing short periods of incarceration as the result of minor infractions of probation conditions without complying with the traditional due process requirements for revocation hearings, we find it unnecessary to address the issue in view of our conclusion that AS 12.55.085 does not authorize the imposition of a period of incarceration as a condition of probation.

As we discussed earlier, AS 12.55.085 contains a broad grant of discretionary authority to provide for probation "upon the terms and conditions which the court determines." There is no specific statutory prohibition against including incarceration as a condition of probation.[19] However, we recently held in our opinion in *Boyne v. State*, 586 P.2d 1250 (Alaska 1978), that there is no statutory authority in AS 12.55.085 for the imposition of imprisonment as a condition of probation.[20] For the reasons set forth in

20. *Boyne v. State*, 586 P.2d 1250, at 1251 (Alaska 1978). The majority of courts in other jurisdictions which have addressed this issue agree with this conclusion. *Archer v. Snook*, 10 F.2d 567, 568 (D.C.Ga.1926); *State v. Van Meter*, 7 Ariz.App. 422, 440 P.2d 58, 64 (1968); *People v. Ledford*, 173 Colo. 194, 477 P.2d 374, 375 (1970); *State v. Harris*, 251 N.W.2d 483, 484 (Iowa 1977); *State v. Marshall*, 247 N.W.2d 484, 486, 487 (S.D.1976); *Milligan v. State*, 465 S.W.2d 157, 158–59 (Tex.Cr.App.1971); *cf. State v. Huggett*, 55 Haw. 632, 525 P.2d 1119 (1974) (remanding to reconsider permissibility of imprisonment as a special condition of probation); *contra Tabor v. Maxwell*, 175 Ohio St. 373, 194 N.E.2d 856, 858 (1963). *See* 147 A.L.R. 656 (1943).

*Boyne*, we hold that the statute cannot be contrived to encompass a condition of probation, incarceration, which is in fact the antithesis of the essential purposes of probation.[21]

 The third condition of probation which Sprague challenges is the requirement that he "[s]ubmit, upon the request of a probation officer, to a search of [his] person, personal property, residence or any vehicle in which [he] may be found for the presence of narcotics or dangerous drugs." Sprague asserts that under our recent decision in *Roman v. State*, 570 P.2d 1235 (Alaska 1977), there is an insufficient nexus between the underlying offense and this condition of probation to warrant searches on less than probable cause. *Roman* involved the search of a parolee convicted for possession of heroin for narcotics at an airport while he was waiting to board a plane to take him to his new job on the Trans-Alaska Pipeline. While we recognized in *Roman* that a convicted and released offender has a diminished expectation of privacy under the Fourth Amendment to the federal Constitution and article 1, section 14 of the Alaska Constitution governing searches and seizures, and to that extent conditioning release on some forms of search by correctional authorities is consistent with the goal of rehabilitation of the offender, we specifically held that:

> warrantless searches of parolees or probationers and their residences should not be countenanced unless there is a direct relationship of the searches to the nature of the crime for which the parolee was convicted.[22]

In *Roman* we found that conditioning the appellant's probation on his consent to warrantless searches under the direction of the parole officer was "reasonably related to the rehabilitation of the offender and the protection of the public" and was not "unduly restrictive of liberty." [23]

In the case at bar the connection between Sprague's conviction for the crime of burglary and the imposition of the condition of probation requiring him to submit to

---

*People v. Ledford*, 173 Colo. 194, 477 P.2d 374, 376 (1970), noted that as a result of the holding in *Archer v. Snook*, 10 F.2d 567 (D.C. Ga.1926), construing the federal probation statute to preclude confinement, 8 U.S.C. § 724 (1940) was amended in 1958 to allow for confinement as a condition of probation. Similar changes have occurred in several states as a result of courts ruling that incarceration was not authorized by probation statute. *See State v. Miner*, 113 Ariz. 56, 546 P.2d 342 (1976), and the discussion of cases in *Franklin v. State*, 87 Idaho 291, 392 P.2d 552, 556–60 (1964). *But cf. State v. Wagenius*, 99 Idaho 273, 581 P.2d 319 (1978) (limiting the decision in *Franklin* and allowing the imposition of a term of imprisonment as a condition of withheld judgment).

**21.** In *Boyne v. State*, 586 P.2d 1250 (Alaska 1978), we quoted at length from *People v. Ledford*, 173 Colo. 194, 477 P.2d 374, 375 (1970), which interpreted Colorado's probation statute:

> By its very nature and definition, probation means and signifies liberty under certain imposed conditions. Its basic purpose is to provide a program which offers an offender the opportunity to rehabilitate himself without confinement. This is to be accomplished under the tutelage of a probation officer and under the continuing power of the court to impose a sentence for his original offense in the event he abuses this opportunity and violates the conditions of probation. . . .

> When an accused is granted probation, he is also granted his liberty and freedom from confinement in a jail or penitentiary. Unless there is specific statutory authority to the contrary, a trial court may not on the one hand grant probation and on the other hand impose institutional confinement or a jail sentence as a condition of that probation. Trial courts have a wide discretion in imposing certain conditions upon a probationer, but not included within its discretionary power is the authority to impose jail confinement as a condition.

We held in *Boyne* that " 'this policy and the limits which should be placed upon it are matters properly for the legislature to consider and not for this court to attempt to read into the present statute[s]'." *Boyne v. State*, 586 P.2d 1250, at 1252 (Alaska 1978), *quoting People v. Ledford*, 173 Colo. 194, 477 P.2d 374, 376 (1970).

**22.** *Roman v. State*, 570 P.2d 1235, 1242–43 (Alaska 1977). Although *Roman* dealt with the rights of a parolee, we noted there that we will treat probationers and parolees similarly for purposes of search and seizure questions. *Id.* at 1237 n.3.

**23.** *Id.* at 1240. *See also Tiedeman v. State*, 576 P.2d 114 (Alaska 1978); *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977).

searches specifically for drugs is much more tenuous. At the sentencing hearing before the superior court, Judge Ripley commented on Sprague's admissions of "drug contacts" in the presentence report as follows:

> And as I say, you're not being tried here for possession of any kind of drug or being sentenced because you're a drug person. But that's a lot of use . . . if that picture of you is accurate. Also, it is the kind of thing that in my opinion cuts into the—whether it's this or whether it's alcohol or whether it's staying in the sack all day, . . . it cuts into keeping your life organized and moving in any given direction. It's the kind of thing that can bring you into contact with people to whom it doesn't make any difference if they kick in somebody's door.

Thus, the superior court apparently conditioned Sprague's probation on his consent to being searched for narcotics in order to forestall Sprague's future involvement with the kind of individuals who would be likely to burglarize other people's homes.

24. In *Roman v. State*, 570 P.2d 1235 (Alaska 1977), we noted that a consent to search condition "might be permissible in the case of one convicted of sale of narcotic drugs or of concealing stolen property to ensure that such activities were no longer continuing." (footnote omitted) *Id.* at 1242. Similarly, in the present case we would have viewed a consent to search specifically for stolen property more favorably than the search for drugs condition at issue here.

25. *People v. Keller*, 76 Cal.App.3d 827, 143 Cal. Rptr. 184 (1978), cited by appellant, supports our conclusion, *Keller* involved a three-year probation for the crime of petty theft, namely, for stealing a 49¢ ball point pen. As one condition of probation the appellant agreed to consent to searches for narcotics in much the same manner as Sprague. The court in *Keller* held that the condition of probation was invalid since it did not exhibit a reasonable relationship to the crime committed and the rehabilitative goal of deterrence of future similar criminality.

26. At sentencing before Judge Ripley, Sprague indicated that he wanted to be closely supervised on probation with respect to his drug usage.

> THE COURT: Drug dependence is not a major portion of your life?

Our reasoning in *Roman* does not permit us to approve a consent to search based on so weak a connection between the crime committed and the condition of probation. Sprague was not accused of any drug offenses, nor was it shown that he was addicted to drugs or that his involvement in the burglary was precipitated by a need for money to purchase illegal drugs.[24] If we were to uphold the probation condition in this case, in effect, we would be opening up virtually all classes of offenders to warrantless searches on less than probable cause. We decline to find that the dual goals of rehabilitation of the probationer and protection of the public require such a result.[25] However, if on remand to the superior court for resentencing Sprague prefers to retain the search condition of probation on his own initiative, with the advice and consent of counsel, then such a condition would be permissible.[26] Moreover, the court may modify the search requirement to a condition that Sprague submit to searches for stolen goods.

> MR. SPRAGUE: No. It was mostly experimental. And having tried it, I don't really like most of this. There's no way of telling what it'll do to you, and I've quit doing it.
>
> THE COURT: That statement doesn't square with the fact that it's—there appears to be some much LSD usage. That may be an exaggeration, I don't know.
>
> MR. SPRAGUE: I couldn't—I couldn't put an exact number on it for him.
>
> THE COURT: Okay.
>
> MR. SPRAGUE: And it was several times, but I couldn't tell him exactly how many.
>
> THE COURT: More than 10?
>
> MR. SPRAGUE: Yeah.
>
> THE COURT: More than 20?
>
> MR. SPRAGUE: About 20.
>
> THE COURT: More than 50?
>
> MR. SPRAGUE: No.
>
> THE COURT: Too numerous to count starts to sound to me more like 200. All right. Is there anything else you'd like to tell me?
>
> MR. SPRAGUE: I think right now for me probation would be a good thing because it would keep me under control.
>
> THE COURT: Well. . . .
>
> MR. SPRAGUE: And it would keep somebody watching me.
>
> THE COURT: Well. . . .
>
> MR. SPRAGUE: And that's what I need.

Affirmed as to the conviction and Remanded to the superior court for resentencing proceedings in accordance with this opinion.[27]

BURKE, Justice, dissenting in part.

I disagree with the majority's conclusion that it was improper for the superior court to condition Sprague's probation on the requirement that he submit to a warrantless search, upon the request of a probation officer, for the presence of narcotics or dangerous drugs. Where, as here, the offender has a history of drug abuse, I think that such a requirement is "reasonably related to the rehabilitation of the offender and the protection of the public" and not "unduly restrictive of [his] liberty." *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977). To the extent that our opinion in *Roman v. State* dictates a contrary result, I would overrule it.

---

27. This court's decision to strike certain conditions of probation does not affect other valid conditions imposed. *State v. Hess*, 12 Wash. App. 787, 532 P.2d 1173, 1177 (1975), *aff'd*, 86 Wash.2d 51, 541 P.2d 1222 (1975); *People v. Dominguez*, 256 Cal.App.2d 623, 64 Cal.Rptr. 290, 294 (1967).