## DUNCAN LEE LATIMER v. STATE OF MARYLAND

[No. 1650, September Term, 1980.]

*Decided September 4, 1981.*

The cause was submitted on briefs to GILBERT, C. J., and MOORE and WEANT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Malloy, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Adriana V. Klich, Assistant Attorney General,* and *John R. Salvatore, State's Attorney for Washington County,* for appellee.

WEANT, J., delivered the opinion of the Court.

In the case at bar, Duncan Lee Latimer is appealing from the judgment of the Circuit Court for Washington County whereby he was convicted of five counts of uttering a forged check and sentenced to serve consecutive five year terms of imprisonment for each of said convictions. In so doing he asks this Court to consider the following arguments:

I.   The lower court erred in admitting the confessions allegedly made by [him].

II.  The lower court erred in refusing to dismiss the charges against [him] because the Intrastate Detainer Act had been violated.

III. The lower court erred in sentencing [him] to five consecutive five year sentences on the five uttering a forged check charges.

For the reasons set forth herein, we shall affirm the Washington County Circuit Court judgment.

I.

The brief facts to this issue are these. Duncan Lee Latimer was arrested in April 1980 in Frederick County, Maryland. He was taken to the lockup of the Hagerstown City Police Department where it became the intention that he be questioned by Detective Steven L. Bussard of that department. Before this questioning began Latimer was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); as a result he declined to sign a waiver of these rights. Hence no questions were asked. The appellant made no request for an attorney.

Thereafter, the appellant was transported to the Maryland House of Correction, some eighty-five miles away.[1] The appellant was there approached by Sergeant Scott V. B.

---

1. The record would appear to indicate that the appellant was being returned to the Maryland House of Correction because he had escaped therefrom.

English of the Maryland State Police and Detective Bussard armed with an order of court authorizing the obtention of handwriting exemplars from him. Again he was advised of his *Miranda* rights. This time he signed two waivers of these rights, and, after having been told of their contents and having been requested to read same, Latimer decided to talk. In so doing he made several statements which he later unsuccessfully attempted to suppress.

· It is now argued that the trial court erred under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Miranda v. Arizona, supra,* in admitting the statements complained of after the appellant had availed himself of the right to remain silent. It is maintained that the right to remain silent and the right to have an attorney present both require overtures from the defendant before either of these tenets can be waived. Latimer here claims that he did not pursue the questioning, that there was no waiver of the *Miranda* right to remain silent, and that the officers *instituted* the examination at the House of Correction in violation of this right.

We think it clear that *Edwards* is concerned specifically with a valid waiver of the right to counsel and does not encompass the specific request to remain silent. In our view, the situation is entirely different when an individual chooses to remain silent of his own accord without invoking his right to counsel. After the expression by a defendant of the desire for an attorney, the police may approach counsel after such has been provided. However, in the situation where the defendant has chosen to remain silent without more, he has not necessarily indicated a belief that he is unable to speak for himself and is in need of an attorney. Instead, he has chosen to remain silent for the present; that choice should not, in our opinion, destroy *all* lines of communication nor make a prelude by the defendant absolutely necessary before further questioning. *But cf. Bryant v. State,* 49 Md. App. 272, 431 A.2d 714 (1981). In that case, where the defendant had asserted the right to counsel and such had not yet been provided, we held that a prelude by the

defendant was necessary before he could be questioned further.

In the case of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the circumstances leading up to the defendant's confession are strikingly similar to those of the instant case. In both cases the right to cut off questioning was fully respected at the time of the initial interrogation. Thereafter, both defendants were advised of their *Miranda* rights and both indicated their desire to discuss the matter in question; in neither case was an attorney requested. Here, as in the *Mosley* case, there was an interval of more than two hours before the defendant was questioned by another police officer at another location. In *Mosley,* while the initial questioning concerned some robberies, the second questioning covered an unrelated holdup murder. The defendant was again given a full and complete *Miranda* warning, after which he made an inculpatory statement resulting in his conviction for murder. In our case the appellant was also advised a second time of his rights under *Miranda;* afterwards he signed two waivers of these rights, telling the officers that "he would talk to us and he understood [the *Miranda* rights]." Although the questioning that resulted apparently included the same subject matter as was attempted at the first interrogation, the initial purpose of the second inquiry was for the extraction of handwriting exemplars.

In arriving at its conclusion that Mosley's incriminating statement did not dilate the principles of *Miranda v. Arizona, supra,* the Supreme Court considered the argument posed by the dissent, *i.e.,* that *Miranda* established *the tenet that once a person expresses a desire to remain silent questioning may be resumed only when counsel is present.* 423 U.S. at 105 n. 10, 96 S.Ct. at 326 n. 10, 46 L.Ed.2d at 321 n. 10. In so doing the Court went on to state as follows:

> *But clearly the Court in Miranda imposed no such requirement,* for it distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and directed

that "interrogation must cease until an attorney is present" only "[i]f the individual states that he wants an attorney." [*Id.* (emphasis added) (quoting *Miranda v. Arizona,* 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723)].

However, there can be no question that this is so under *Edwards v. Arizona, supra.* In that case the Supreme Court said at 451 U.S. 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 386:

> We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

The Court went on to point out in *Edwards* that "[i]n *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel." 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 386.

There are innumerable cases which hold that *Miranda* does not create a *per se* proscription of all further interrogation once the person being interrogated has invoked his desire to remain silent. *Hill v. Whealon,* 490 F.2d 629 (6th Cir. 1974); *United States v. Collins,* 462 F.2d 792 (2d Cir.) *(en banc), cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972); *Jennings v. United States,* 391 F.2d 512 (5th Cir.), *cert. denied,* 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 136 (1968); *United States v. Choice,* 392 F.Supp. 460 (E.D. Pa. 1975); *People v. Naranjo,* 181 Colo. 273, 509 P.2d 1235 (1973) *(en banc); People v. Pittman,* 55 Ill.2d 39, 302 N.W.2d 7 (1973); *State v. McClelland,* 164 N.W.2d 189 (Iowa 1969); *State v. Law,* 214 Kan. 643, 522 P.2d 320 (1974); *Fellows v.*

*State,* 13 Md. App. 206, 283 A.2d 1 (1971), *cert. denied,* 264 Md. 747 (1972); *Gardner v. State,* 10 Md. App. 233, 269 A.2d 186 (1970), *cert. denied,* 404 U.S. 937, 92 S.Ct. 279, 30 L.Ed.2d 250 (1971); *Conway v. State,* 7 Md. App. 400, 256 A.2d 178 (1969); *State v. Godfrey,* 182 Neb. 451, 155 N.W. 2d 438, *cert. denied,* 392 U.S. 937, 88 S.Ct. 2309, 20 L.Ed.2d 1396 (1968); *People v. Gary,* 31 N.Y.2d 68, 286 N.E.2d 263, 334 N.Y.S. 883 (1972); *State v. Bishop,* 272 N.C. 283, 158 S.E.2d 511 (1968); *Commonwealth v. Grandison,* 449 Pa. 231, 296 A.2d 730 (1972); *State v. Robinson,* 87 S.D. 375, 209 N.W.2d 374 (1973); *Hill v. State,* 429 S.W.2d 481 (Tex. Crim. App.), *cert. denied,* 393 U.S. 955, 89 S.Ct. 384, 21 L.Ed.2d 367 (1968); *State v. Estrada,* 63 Wis.2d 476, 217 N.W.2d 359, *cert. denied,* 419 U.S. 1093, 95 S.Ct. 687, 42 L.Ed.2d 686 (1974). The reasoning in these cases seems to be that once the right to silence has been expressed the police must at that time cease their interrogation. This serves to notify the defendant that all he needs to do to foreclose or halt questioning is to give a negative response when asked if he will submit thereto. In order to communicate this message it is imperative that the interrogation stop for some period of time. By this stoppage the defendant is made aware that he need answer no further questions either then or later unless he so desires. It seems then that the action that is condemned in *Miranda* is police refusal to take a defendant's "no" for an answer, that is, situations wherein the police continue to question and thereby harass and coerce the defendant so as to overcome his asseveration of his constitutional right to remain silent.

We think this situation entirely different from that with which we are confronted here; namely, when an individual chooses to remain silent on his own and not to seek the right of counsel. As stated previously, we do not believe that the defendant's choice to remain silent for the present should destroy all lines of communication. Such a situation could lead only to a stalemate.

In the instant case, after Latimer had invoked his right to silence no questions were asked. Instead, he was transported from Hagerstown to the House of Correction at Jessup.

There he was approached by officers who bore an order of court to get some handwriting exemplars. According to the testimony of Officer Bussard no promises or threats were made to the appellant; that same officer also testified that, after giving the handwriting exemplars, Latimer made certain inculpatory statements. Conversely, the appellant denies that these incriminating statements were voluntary and that his signing of the waiver forms was voluntary; instead he claims that he executed the waivers and made the statements in question after the officers threatened to hold him in contempt for failure to obey the court's order to give the handwriting samples. He alleges that he thought he was giving these samples when he in fact was signing the waivers. However, an examination of the forms which he signed clearly belies this pretext. Whereas the waivers that he executed were entitled "Waiver," the forms containing the handwriting specimens were each entitled "Handwriting Specimen Form" and carried a repetition of certain items in Latimer's handwriting.

In denying the appellant's motion to suppress the inculpatory statements, the trial court commented that "this Court does not believe [Latimer's] testimony . . .." The court further said that it was "satisfied that any statement . . . given was given after a full and fair understanding of his Miranda rights and a waiver thereto."

Accordingly, we find that there was no violation in the case at bar of *Miranda* as explicated by *Edwards v. Arizona, supra.* Moreover, as was the case in *Jackson v. State,* 13 Md. App. 31, 280 A.2d 914 (1971), we recognize that where there is conflict in the respective testimonies of the appellant and the police as to whether or not any promises or threats were made to induce a confession, such presents an issue of fact for the trial court's determination. Here we think that issue was resolved properly.

## II.

The record of the instant case reveals that Latimer's request for disposition under the Intrastate Detainer Act

was filed in the circuit court on 26 June 1980, twenty-nine days after his initial appearance in that court. Thereafter, on the scheduled trial date of 1 July 1980, the defense, in seeking a continuance, had this to say:

> Your Honor, I would like to move on behalf of Mr. Latimer and I am sure that we could consider this as a joint motion from defense and State for a continuance of this case; the reason being that when Mr. Latimer was up here for first appearance some weeks ago, there was some preliminary plea negotiations with the State and I'm sure Mr. Salvatore, as well as myself, we were both under the distinct impression that the case would be pled out this morning or today. However, there has been a change in circumstances and a change in Mr. Latimer's feelings and the State thinking that the case was going to be pled, I'm sure it doesn't have its witnesses here nor does defense have any of its witnesses here if there be any in the future nor are we prepared to try the case. Mr. Latimer indicates he eventually wants trial by Jury and certainly defense nor STate [*sic*] is ready to do so at this time. So therefore, your Honor, I would respectfully move that the case be continued to a later date.

The court acceded to Latimer's wish by rescheduling the trial for 25 August 1980.

On two subsequent occasions the trial of the appellant was postponed; the first time at the State's request because of the absence of a necessary witness and the second time because of the lack of an available courtroom and a jury. When his case did come on for trial on 24 November 1980, one hundred and fifty-one days after his disposition request had been filed, Latimer moved that the indictments filed against him be dismissed because section 616S of article 27 of the Annotated Code of Maryland had been violated. Subsection (b) of that statute provides that "the prisoner shall be brought to trial within 120 days after he has delivered (1) to the State's attorney ... of the county in which the indictment ... is

pending and, (2) to the appropriate court, his written request for a final disposition to be made of the indictment . . . ." That subsection also provides that for good cause shown in open court any necessary or reasonable continuance may be granted. Where the 120 day provision has been breached, dismissal of the untried indictment without prejudice is the appropriate sanction according to subsection (e) of that same statute.

Unlike the appellant we can find no violation of section 616S. Clearly the delay from July 1st until August 25th, a delay of fifty-six days, is attributable to good cause since it was occasioned by the unpreparedness of both the prosecution and the defense to proceed to trial. Further, the appellant did not object to the postponement of trial, most probably because it was his unwillingness to follow through with previous plea negotiations that sparked the delay in the first instance. Obviously then good cause to grant a continuance existed and there has been no violation of section 616S's 120 day provision.

### III.

This very issue was addressed by the Court of Appeals in its decision of *Kaylor v. State,* 285 Md. 66, 400 A.2d 419 (1979); we therefore adopt that Court's conclusion that "a judge may, in the exercise of his discretion, impose consecutive sentences for distinct violations of the law, thus preventing duly convicted offenders from escaping punishment for the commission of their criminal acts." *Id.* at 71, 400 A.2d at 423.

*Judgment affirmed.*
*Costs to be paid by the appellant.*